MICHAEL DEWAYNE PUTMAN, EMPLOYEE, PLAINTIFF v. RANDY ALEXANDER AND/OR MAJESTIC MOUNTAIN CONSTRUCTION, INC., EMPLOYERS (NONINSURED), AND MARSHA PATTERSON-JONES, INDIVIDUALLY, AND/OR RANDY ALEXANDER, DEFENDANTS

DARRELL THOMPSON, EMPLOYEE, PLAINTIFF v. RANDY ALEXANDER AND/OR MAJESTIC MOUNTAIN CONSTRUCTION, INC., EMPLOYERS (NONINSURED), AND MARSHA PATTERSON-JONES, INDIVIDUALLY, AND/OR RANDY ALEXANDER, DEFENDANTS

No. COA08-306
No. COA08-332

(Filed 6 January 2009)

**1. Appeal and Error— appealability—untimely notice of appeal—writ of certiorari**

Although plaintiff's motion to dismiss defendants' appeal on the ground that defendants failed to timely serve their notice of appeal on plaintiff under N.C. R. App. P. 3 was granted, the Court of Appeals exercised its discretion to grant defendants' petition for writ of certiorari.

**2. Workers' Compensation— uninsured subcontractor—injuries to employees—general contractor as statutory employer**

The evidence before the Industrial Commission in a workers' compensation case was sufficient to establish that defendant construction company was the statutory employer under N.C.G.S. § 97-19 of two carpenters who were injured while working for an uninsured subcontractor on a townhome construction project where it showed that the owner of the construction company entered into an agreement with the developer that the construction company would serve as the general contractor for the project; the site manager for the project who hired the uninsured subcontractor worked for the construction company rather than for the developer; and the owner of the construction company was not a part owner of the townhome project at the time of the accident.

**3. Workers' Compensation— injuries to employees of unlicensed subcontractor—civil penalty on statutory employer**

The Industrial Commission did not err by assessing civil penalties under N.C.G.S. § 97-94(d) against the owner of the statutory employer of two carpenters who were injured while working for an uninsured subcontractor because a civil penalty may be assessed against the person who had the ability and authority to bring a statutory employer in compliance with N.C.G.S. § 97-93 but who willfully failed or neglected to do so.

**4. Workers' Compensation— civil penalty—disability compensation—compensation for medical expenses**

The Industrial Commission did not err in a workers' compensation case by decreeing that the amount of the civil penalty assessed against the owner of the statutory employer could be determined based on plaintiffs' disability compensation and plaintiffs' compensation for medical expenses because N.C.G.S. § 97-94(d) confers upon the Commission the discretion to assess civil penalties against a person who violates that subsection based upon any compensation, including medical compensation, due the injured employee.

Appeal by defendants from Opinions and Awards entered 5 December 2007 by the North Carolina Industrial Commission. Heard in the Court of Appeals 22 September 2008.

*Judith C. Fraser, for plaintiff-appellee Michael Dewayne
Putman.*

*Melrose, Seago & Lay, P.A., by Kimberly C. Lay, for plaintiff-
appellee Darrell Thompson.*

*Leicht & Olinger, by Gene Thomas Leicht, for defendants-
appellants Majestic Mountain Construction, Inc. and Marsha
Patterson-Jones.*

MARTIN, Chief Judge.

Majestic Mountain Construction, Inc. and Marsha Patterson-
Jones (collectively "defendants") appeal from Opinions and Awards
by the North Carolina Industrial Commission ("Commission") (1)
awarding disability benefits, medical expenses, and attorney's fees
and costs to Michael Dewayne Putman and Darrell Thompson (col-
lectively "plaintiffs") and (2) assessing additional civil penalties
against defendant Marsha Patterson-Jones. We affirm each of the
Commission's awards.

While defendants have maintained separate appeals, both appeals
involve common questions of law, as evidenced by defendants' deci-
sion to submit virtually identical appellate briefs in each case.
Therefore, upon our own initiative, we consolidate these appeals for
the purpose of rendering a single opinion on all issues properly
before the Court. *See* N.C.R. App. P. 40 (2008) ("Two or more actions
which involve common questions of law may be consolidated for
hearing . . . upon the initiative of th[e appellate] court.").

On 16 June 2005, plaintiffs were injured by an accident arising out
of and in the course of their employment with Randy Alexander.
Plaintiffs were doing carpentry work "on a second-story deck that
collapsed and broke away from [a] town home [that was under con-
struction], causing plaintiff[s] to fall approximately 15 to 16 feet
onto a lower deck, then fall to the ground approximately 10 feet
below the lower deck, and then down an embankment." Both plain-
tiffs sustained injuries which required varying degrees of continued
medical treatment and rehabilitative or therapeutic care, and which
restricted their ability to return to work. At the time of the accident,
plaintiffs' employer, Randy Alexander, did not have workers' com-
pensation insurance.

In June 2005, plaintiffs were working on the construction site for
a residential development project named the Villas of Provence in

Glenville, North Carolina. At that time, William Allen Patterson was the title owner of the 9.5 acre tract on which the residential units were being constructed. Marsha Patterson-Jones, Mr. Patterson's daughter, was the owner and "qualifier" of Majestic Mountain Construction, Inc. ("MMC"), which was the licensed general contractor for the Villas of Provence project. Mrs. Patterson-Jones was also a licensed realtor and owned Majestic Mountain Realty, which listed two of the first four units sold in the Villas of Provence. Ben Jones, Mrs. Patterson-Jones's husband, served as the "site manager for the property on which defendant [MMC] was developing and plaintiff[s were] working," and was responsible for "hir[ing] the subcontractors, [telling] them what to do, check[ing] to make sure the work was being done properly, and report[ing] back to his wife on what materials needed to be ordered" for the project. However, whether Ben Jones was retained by his wife's company, MMC, or by his father-in-law is one of the issues before this Court. Ben Jones was also responsible for hiring Randy Alexander and was the person to whom Randy Alexander and plaintiffs reported on the Villas of Provence construction site.

On 23 October 2006, both plaintiffs' cases were presented in one hearing before a deputy commissioner. On 30 May 2007, the deputy commissioner filed Opinions and Awards which determined that plaintiffs sustained compensable injuries by an accident arising out of and in the course of their employment with Randy Alexander. The deputy commissioner concluded that MMC was the general contractor on the job where plaintiffs were injured and that Randy Alexander was a subcontractor to MMC. He also concluded that: (1) MMC was plaintiffs' statutory employer pursuant to N.C.G.S. § 97-19; (2) MMC was "required to have workers' compensation insurance to cover their subcontractors' employees since they did not require proof of insurance from subcontractor Randy Alexander"; and (3) a civil penalty should be assessed against Mrs. Patterson-Jones pursuant to N.C.G.S. § 97-94(d) for her failure to bring MMC into compliance under N.C.G.S. § 97-93 when she had the ability and authority to do so. Defendants appealed to the Full Commission. On 5 December 2007, the Commission entered Opinions and Awards which adopted the deputy commissioner's decisions, with minor modifications. This appeal follows.

[1] We first consider plaintiff Thompson's motion to this Court to dismiss defendants' appeal on the grounds that defendants failed to

timely serve their notice of appeal on plaintiff Thompson pursuant to Rule 3 of the North Carolina Rules of Appellate Procedure. We also consider defendants' petition for writ of certiorari filed in response to plaintiff Thompson's motion to dismiss. For the reasons discussed below, we grant plaintiff Thompson's motion to dismiss defendants' appeal, and we grant defendants' petition for writ of certiorari.

"In order to confer jurisdiction on the state's appellate courts, appellants of lower court orders must comply with the requirements of Rule 3 of the North Carolina Rules of Appellate Procedure." *Bailey v. State*, 353 N.C. 142, 156, 540 S.E.2d 313, 322 (2000). "The provisions of Rule 3 are jurisdictional, and failure to follow the rule's prerequisites mandates dismissal of an appeal. In addition, the rules of the Supreme Court that regulate appeals, such as Rule 3, are mandatory and must be observed." *Id.* (citation omitted).

Rule 3(c) of the North Carolina Rules of Appellate Procedure requires that, within the time limitations specified by the rule, "a party must file and serve a notice of appeal." N.C.R. App. P. 3(c) (2008). According to Appellate Rule 3(e), "[s]ervice of copies of the notice of appeal may be made as provided in Rule 26 of [the appellate] rules," *see* N.C.R. App. P. 3(e), and that service "*may be so made upon a party or upon his attorney of record.*" *See* N.C.R. App. P. 26(c) (2008) (emphasis added).

In the present case, defendants timely filed their notice of appeal to this Court from the 5 December 2007 Opinion and Award in favor of plaintiff Thompson on 18 December 2007. However, instead of mailing a copy of that notice to plaintiff Thompson's counsel of record, who appeared on his behalf before both the deputy commissioner and the Full Commission, service was made upon plaintiff Putman's counsel of record. Plaintiff Thompson subsequently moved to dismiss defendants' notice of appeal on 6 February 2008 for failing to comply with the service requirements of Appellate Rule 3. Although defendants filed a second "amended" notice of appeal on 7 February 2008 which complied with the service requirements of Rule 3, the "amended" notice of appeal was untimely. *See* N.C.R. App. P. 3(c)(1) ("In civil actions and special proceedings, a party must file and serve a notice of appeal . . . within 30 days after entry of judgment if the party has been served with a copy of the judgment within the three-day period prescribed by Rule 58 of the Rules of Civil Procedure . . . ."). Therefore, defendants' appeal from the Opinion and Award entered as to plaintiff Thompson's claims must be dismissed.

Nevertheless, this Court may issue a writ of certiorari "when the right to prosecute an appeal has been lost by failure to take timely action." N.C.R. App. P. 21(a)(1) (2008). Having determined that defendants lost their right to prosecute their appeal as to plaintiff Thompson by their failure to file a timely notice of appeal that fully complies with Appellate Rule 3(c), we exercise our discretion to grant defendants' petition for writ of certiorari.

---

The issues before this Court are as follows: (I) whether the Commission erred by concluding that MMC was plaintiffs' statutory employer under N.C.G.S. § 97-19; (II) whether the Commission erred by assessing civil penalties against Mrs. Patterson-Jones under N.C.G.S. § 97-94(d); and (III) whether the Commission erred by decreeing that the amount of the civil penalty assessed against Mrs. Patterson-Jones could be determined based on both plaintiffs' disability compensation *and* plaintiffs' compensation for medical expenses.

I.

[2] Defendants first contend the Commission erred by concluding that MMC was plaintiffs' statutory employer under N.C.G.S. § 97-19. The parties agree that Ben Jones hired Randy Alexander who, in turn, hired plaintiffs to work on the Villas of Provence development project. However, defendants assert that no employment relationship existed between plaintiffs and MMC to implicate N.C.G.S. § 97-19 and, thus, argue that the Commission lacked subject matter jurisdiction to hear plaintiffs' claims against MMC and Mrs. Patterson-Jones. We do not agree.

When it has jurisdiction to hear the claims before it, " '[t]he findings of fact by the Industrial Commission are conclusive on appeal if supported by any competent evidence.' " *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (quoting *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977)), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999); *see also* N.C. Gen. Stat. § 97-86 (2007) (providing, in part, that an award of the Industrial Commission "shall be conclusive and binding as to all questions of fact").

However, "[w]hether a defendant is a statutory employer within the meaning of [N.C.G.S.] § 97-19 is a jurisdictional matter." *Masood v. Erwin Oil Co.*, 181 N.C. App. 424, 426, 639 S.E.2d 118, 120 (citing *Cook v. Norvell-Mackorell Real Estate Co.*, 99 N.C. App. 307, 309, 392

S.E.2d 758, 759 (1990)), *aff'd by an equally divided court*, 361 N.C. 579, 650 S.E.2d 595 (2007). Accordingly, because "the Commission has no jurisdiction to apply the [Workers' Compensation] Act to a party who is not subject to its provisions," *Williams v. ARL, Inc.*, 133 N.C. App. 625, 628, 516 S.E.2d 187, 190 (1999) (citing *Youngblood v. North State Ford Truck Sales*, 321 N.C. 380, 364 S.E.2d 433, *reh'g denied*, 322 N.C. 116, 367 S.E.2d 923 (1988)), "[n]otwithstanding [N.C.G.S. §] 97-86, the finding of a jurisdictional fact by the Industrial Commission is not conclusive upon appeal even though there be evidence in the record to support such finding." *Lucas v. Li'l Gen. Stores*, 289 N.C. 212, 218, 221 S.E.2d 257, 261 (1976). Instead, "[t]he reviewing court has the right, and the duty, to make its own independent findings of such jurisdictional facts from its consideration of all the evidence in the record." *Id.*; *see also Cook*, 99 N.C. App. at 309, 392 S.E.2d at 759 ("[W]e are required to review the evidence of record and make independent findings of jurisdictional facts established by the greater weight of the evidence with regard to plaintiff's employment status.").

N.C.G.S. § 97-19 provides, in relevant part:

Any principal contractor, intermediate contractor, or subcontractor who shall sublet any contract for the performance of any work without requiring from such subcontractor or obtaining from the Industrial Commission a certificate, issued by a workers' compensation insurance carrier, or a certificate of compliance issued by the Department of Insurance to a self-insured subcontractor, stating that such subcontractor has complied with [N.C.G.S. §] 97-93 hereof, shall be liable, irrespective of whether such subcontractor has regularly in service fewer than three employees in the same business within this State, to the same extent as such subcontractor would be if he were subject to the provisions of this Article for the payment of compensation and other benefits under this Article on account of the injury or death of any employee of such subcontractor due to an accident arising out of and in the course of the performance of the work covered by such subcontract. If the principal contractor, intermediate contractor or subcontractor shall obtain such certificate at the time of subletting such contract to subcontractor, he shall not thereafter be held liable to any employee of such subcontractor for compensation or other benefits under this Article.

N.C. Gen. Stat. § 97-19 (2007). This statute "is an exception to the general definitions of 'employment' and 'employee' set forth in [N.C.G.S.]

§ 97-2, and provides that a principal contractor, intermediate con-
tractor, or subcontractor may be held liable as a statutory employer
where two conditions are met." *Williams*, 133 N.C. App. at 629, 516
S.E.2d at 190. First, " 'the injured employee must be working for a
subcontractor doing work which has been contracted to it by a prin-
cipal contractor,' and[, second,] 'the subcontractor does not have
workers' compensation insurance coverage covering the injured
employee.' " *Id.* (quoting *Rich v. R.L. Casey, Inc.*, 118 N.C. App. 156,
159, 454 S.E.2d 666, 667, *disc. review denied,* 340 N.C. 360, 458
S.E.2d 190 (1995)). Since the parties do not dispute that Randy
Alexander did not have workers' compensation insurance at the
time of the accident, we need only examine whether the first condi-
tion has been met.

A.

In their brief, defendants do not contest the determination that
Randy Alexander worked as a subcontractor, rather than as an inde-
pendent contractor. So, in order to determine that the Commission
correctly concluded that MMC was plaintiffs' statutory employer,
after our consideration of all of the evidence in the record, we must
find (1) that Mrs. Patterson-Jones, on behalf of MMC, entered into an
agreement with Mr. Patterson, which provided that MMC would serve
as the general contractor for the project, and (2) that Ben Jones
worked for MMC and hired Randy Alexander as a subcontractor for
MMC, rather than for Mr. Patterson.

1.

Although she was present during the proceedings, Mrs. Patterson-
Jones did not testify at the 23 October 2006 hearing. However, Mr.
Patterson, her father, and Ben Jones, her husband, each gave testi-
mony before the deputy commissioner. Both Mr. Patterson and Ben
Jones testified that Mrs. Patterson-Jones was the sole owner and
"qualifier" of MMC, that a contractor's license for the State of North
Carolina was held in the name of MMC, and that MMC was the gen-
eral contractor for the Villas of Provence development project.

In addition, Mr. Patterson testified that his daughter formed MMC
at least two years before construction began on the Villas of Provence
project in 2004. Mr. Patterson further testified that he knew he
needed a licensed contractor on the project, and that neither he nor
Ben Jones hold a general contractor's license. Mr. Patterson testi-
fied that he wanted his daughter's company to take on that role
because "[s]he's had her [general contractor's] license for a number

of years . . . [and t]here's a benefit to the Villas of Provence that *she has, through her corporation, a contractor's license.*" (Emphasis added.) Mr. Patterson also testified that, in exchange for receiving the benefit of his daughter's license and labor through MMC as the general contractor, they both agreed that Mrs. Patterson-Jones, MMC's owner, would be compensated only upon the sale of each unit.

After reviewing all of the evidence in the record, we find from that evidence and by its greater weight, as did the Commission, that Mrs. Patterson-Jones, on behalf of and through her company MMC, agreed to and did serve as the general contractor on the Villas of Provence project.

2.

Defendants also assert that Ben Jones did not work for MMC, but instead served as Mr. Patterson's "independent construction management consultant" on the project. They claim that Ben Jones was paid for his work by checks drawn from Mr. Patterson's bank account. However, the record contains no evidence—e.g., copies of bank statements or cancelled checks payable from Mr. Patterson to Ben Jones, or payable from Ben Jones to Randy Alexander or plaintiffs—that Randy Alexander was paid by monies from an account owned by Mr. Patterson. In fact, evidence was presented that, although Ben Jones signed the checks, Randy Alexander thought he remembered that the checks were drawn from an account belonging to MMC, where "Majestic Mountain Construction" may have been printed on the top of the checks.

The evidence in the record also tended to show that both plaintiffs believed that Ben Jones worked for MMC. Plaintiffs also testified that, to their knowledge, the other carpentry crews with whom they worked on the same units were working for MMC. Plaintiff Thompson further testified that he understood that he was "working for Ben Jones and Majestic Mountain Construction" and that he thought Ben Jones actually owned MMC. When questioned about why plaintiff Thompson may have thought Ben Jones was working for MMC, Mr. Jones said, "No. I mean, I guess he—I don't know. I mean—." When asked, "Did you tell him that?," Ben Jones responded, "Not that—not to my knowledge. No." However, when asked about whether he "had that authority from Majestic Mountain Construction on [the Villas of Provence] project" to discharge individual workers from any of the subcontractors' crews, Ben Jones admitted, "Anybody *that I work for.* I have to have that." (Emphasis added.)

Plaintiff Thompson's wife also testified that, while Ben Jones and Mrs. Patterson-Jones waited with her at the hospital for news about her husband, Ben Jones "give [sic] me a business card the night of the accident, with the construction name, his name, address, phone numbers, and told me to call him if I needed anything." When asked what information was on the business card, she testified that the card said, " 'Majestic Mountain Construction, Incorporated. Ben Jones,' has their physical address, cell number and office number." She also testified that she took Ben Jones's comment and the information on the card to mean that MMC "was his employer and that he would have workman's comp or, if there was anything further that we needed, to contact him." On cross-examination, Ben Jones admitted that the business card he gave to plaintiff Thompson's wife shows his name, the name of Majestic Mountain Construction, Inc., the physical address for MMC, MMC's company office number, and his cell phone number. When asked in what capacity he used the business card, Ben Jones said, "That one there, I use—I gave it— made it up and put it in the office at Majestic Mountain office so if people comes [sic] in there, wants [sic] a house built" "that maybe they could call me and, you know, I could tell them what I do and they could hire me."

After considering all of the evidence in the record, we find by the greater weight thereof that Ben Jones worked for MMC. Accordingly, since Ben Jones hired Randy Alexander to serve as a subcontractor for MMC, and since both conditions of N.C.G.S. § 97-19 were met, *see Williams*, 133 N.C. App. at 629, 516 S.E.2d at 190, we hold that the Commission correctly determined that MMC was plaintiffs' statutory employer.

B.

Defendants further assert that MMC was not plaintiffs' statutory employer because they claim that, in addition to her ownership of MMC, Mrs. Patterson-Jones was a "part owner" of the Villas of Provence development project. Thus, defendants argue that Mrs. Patterson-Jones could not have "contracted with herself as principal of [MMC] to legally force herself to build a house on the property of the Villas of Provence." Accordingly, defendants argue that the Commission's application of N.C.G.S. § 97-19 was erroneous under *Purser v. Heatherlin Properties*, 137 N.C. App. 332, 527 S.E.2d 689, *disc. review denied*, 352 N.C. 676, 545 S.E.2d 428 (2000). However, we conclude that *Purser* does not control in the present case.

In *Purser*, Mr. and Mrs. McMahan "rented properties and constructed new homes under the business name of Heatherlin Properties," which "employed" Mr. McMahan, who held his general contractor's license. *See Purser*, 137 N.C. App. at 333, 527 S.E.2d at 690. "When building a house, Mr. McMahan listed himself as the general contractor on the building permit and listed Heatherlin Properties as the owner of the property . . . ." *Id.*

In our analysis in *Purser*, this Court emphasized that "it is unreasonable to assume that a person could contract with himself to do something for his own benefit, thereby making himself a general contractor if he should then contract that job to another person." *Id.* at 336, 527 S.E.2d at 692. Since we determined that Mr. McMahan "was on both sides of the equation," we stated that it was "unreasonable to think that Mr. McMahan as owner of the property contracted with himself as a partner or sole proprietor of Heatherlin Properties to legally force himself to build a house on the property." *Id.* at 336-37, 527 S.E.2d at 692. Accordingly, we concluded that "Mr. McMahan was not a general contractor" and that the plaintiff's company "was not a subcontractor, but was instead an independent contractor," and so held that "[t]he Industrial Commission erred when it found that Mr. Purser was covered by N.C.[G.S.] § 97-19." *Id.* at 337, 527 S.E.2d at 692; *see also Cook*, 99 N.C. App. at 310, 392 S.E.2d at 760 ("G.S. § 97-19, by its own terms, cannot apply unless there is first a contract for the performance of work which is then sublet. Consequently, G.S. § 97-19 may apply as between two independent contractors, one of whom is a subcontractor to the other; but it does not apply as between a principal, *i.e.*, an owner, and an independent contractor.") (citing *Beach v. McLean*, 219 N.C. 521, 14 S.E.2d 515 (1941)).

In the present case, there was no evidence in the record to document that Mrs. Patterson-Jones was a part owner of the Villas of Provence at the time plaintiffs were injured. The evidence tended to show that the property was never titled in Mrs. Patterson-Jones's name, and no evidence was presented to demonstrate that Mrs. Patterson-Jones contributed any monies to the purchase of the property. While Mr. Patterson testified that ownership of the property was transferred to Provence Villas, LLC—a company for which Mr. Patterson served as the managing member and Mrs. Patterson-Jones served as a member—he also conceded that this company was not registered with the Secretary of State until July 2005, less than one month *after* the accident in which plaintiffs were injured.

Mr. Patterson testified that Mrs. Patterson-Jones was an "undisclosed principal" in the property prior to the formation of Provence Villas, LLC, and that she acquired a fifteen-percent interest in the property prior to the time of the accident, "somewhere in 2004." However, when asked "what, if anything, was significant in 2004 that [Mr. Patterson] decided to verbally tell [Mrs. Patterson-Jones] that she had this fifteen-percent interest in land," Mr. Patterson testified that "[i]t was basically because we were formulating our plans as to what we were going to do with the property, and [Mrs. Patterson-Jones] was involved." He also testified that "I didn't—we didn't—we didn't transfer anything and—. . . [i]t was purely a personal quasi-business situation," which he stated meant that "[i]t was business and it was personal and it was done in 2004." Nonetheless, after our consideration of all of the evidence in the record, we cannot find by its greater weight that Mrs. Patterson-Jones was a part owner in the Villas of Provence at the time of the accident; rather, we find that she was not. Therefore, we conclude that *Purser* does not control the present case, and hold that the Commission correctly determined that MMC was plaintiffs' statutory employer pursuant to N.C.G.S. § 97-19.

## II.

**[3]** Defendants next contend the Commission erred by assessing civil penalties against Mrs. Patterson-Jones under N.C.G.S. § 97-94(d). Defendants do not deny that Mrs. Patterson-Jones was the person "with the ability and authority to bring [MMC] in compliance with [N.C.G.S. §] 97-93," *see* N.C. Gen. Stat. § 97-94(d) (2007), but instead argue that a statutory employer is not subject to the civil penalty provision of N.C.G.S. § 97-94(d). We disagree.

N.C.G.S. § 97-94 provides, in part:

(a) Every employer subject to the compensation provisions of this Article shall file with the Commission . . . evidence of its compliance with the provisions of G.S. 97-93 and all other provisions relating thereto.

. . . .

(d) Any person who, with the ability and authority to bring an employer in compliance with G.S. 97-93, willfully fails to bring the employer in compliance, shall be guilty of a Class H felony. Any person who, with the ability and authority to bring an employer in compliance with G.S. 97-93, neglects to bring the employer in compliance, shall be guilty of a Class 1

misdemeanor. Any person who violates this subsection may be assessed a civil penalty by the Commission in an amount up to one hundred percent (100%) of the amount of any compensation due the employer's employees injured during the time the employer failed to comply with G.S. 97-93.

N.C. Gen. Stat. § 97-94(a), (d). In other words, based on its "clearly expressed language," *see Deese v. Se. Lawn & Tree Expert Co.*, 306 N.C. 275, 277, 293 S.E.2d 140, 143, *reh'g denied*, 306 N.C. 753, 303 S.E.2d 83 (1982), the civil penalty provision of N.C.G.S. § 97-94(d) may be applied when an employer fails to comply with the requirements of N.C.G.S. § 97-93. Similarly, when a statutory employer fails to insist on the compliance of its subcontractors with the requirements of N.C.G.S. § 97-93, it, too, is liable under the Act "to the same extent as such subcontractor would be if he were subject to the provisions of this Article." *See* N.C. Gen. Stat. § 97-19.

In their brief, defendants assert that N.C.G.S. § 97-94(d) is not applicable to statutory employers because N.C.G.S. § 97-19 does not "magically transform" the relationship between plaintiffs and MMC into that of employer-employee. Nevertheless, as we discussed in section I above, an examination of whether one party is another's statutory employer "raises the jurisdictional question of whether an *employment relationship within the Act* existed" at the time of the injury giving rise to the action. *See Cook*, 99 N.C. App. at 309, 392 S.E.2d at 759 (emphasis added).

In addition, N.C.G.S. § 97-19 "was enacted by the Legislature *to deliberately bring specific categories of conceded nonemployees within the coverage of the Act* for the purpose of protecting such workers from 'financially irresponsible sub-contractors who do not carry workmen's compensation insurance,' " and "to prevent principal contractors . . . from relieving themselves of liability under the Act by doing through sub-contractors what they would otherwise do through the agency of direct employees.' " *Id.* at 310, 392 S.E.2d at 759 (emphasis added) (quoting *Withers v. Black*, 230 N.C. 428, 53 S.E.2d 668 (1949)); *see also Greene v. Spivey*, 236 N.C. 435, 443, 73 S.E.2d 488, 494 (1952) ("[The] manifest purpose of . . . [N.C.G.S. § 97-19] is to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on principal contractors . . . who, presumably being financially responsible, have it within their power, in choosing subcontractors, to pass upon their financial responsibility and insist upon appropriate compensation protection for their workers.").

Accordingly, we conclude that, when circumstances arise that implicate N.C.G.S. § 97-19 because a subcontractor fails to comply with the requirements of N.C.G.S. § 97-93, the Industrial Commission may assess civil penalties pursuant to N.C.G.S. § 97-94(d) against the person who had the ability and authority to bring a *statutory* employer in compliance with N.C.G.S. § 97-93 but who willfully failed or neglected to do so. Therefore, we hold that the Commission did not err by assessing civil penalties against Mrs. Patterson-Jones under N.C.G.S. § 97-94(d) for failing to bring MMC in compliance with N.C.G.S. § 97-93.

### III.

**[4]** Finally, defendants contend the Commission erred by decreeing that the amount of the civil penalty assessed against Mrs. Patterson-Jones could be determined based on plaintiffs' disability compensation and plaintiffs' compensation for medical expenses. Defendants argue that amounts due for plaintiffs' medical expenses may not be included in the Commission's determination of the amount of the civil penalty assessed under N.C.G.S. § 97-94(d).

Defendants assert that N.C.G.S. § 97-94(d) "unambiguously" states that a civil penalty may be assessed "based upon 'compensation' due to the employee." Consequently, defendants argue that the Legislature meant only to grant the Industrial Commission the discretion to assess civil penalties based on "compensation," as defined in N.C.G.S. § 97-2(11), and purposely withheld from the Commission the power to include any amounts based also on "medical compensation," as defined in N.C.G.S. § 97-2(19). *Compare* N.C. Gen. Stat. § 97-2(11) (2007) ("The term 'compensation' means the money allowance payable to an employee or to his dependents as provided for in this Article, and includes funeral benefits provided herein."), *with* N.C. Gen. Stat. § 97-2(19) ("The term 'medical compensation' means medical, surgical, hospital, nursing, and rehabilitative services, and medicines, sick travel, and other treatment, including medical and surgical supplies, as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability . . . ."). Defendants claim that if the Legislature had intended to allow the Commission to include medical compensation as part of the amount assessed for civil penalties under N.C.G.S. § 97-94(d), then it would have expressly referenced "medical compensation" in the statute. For the reasons discussed below, we disagree.

N.C.G.S. § 97-94(d) confers upon the Commission the discretion to assess civil penalties in an amount, not based merely on "compensation" due to the injured employee, but rather based on *any compensation* due to the injured employee. More specifically, N.C.G.S. § 97-94 provides that any person who violates subsection (d) "*may be assessed* a civil penalty by the Commission *in an amount up to* one hundred percent (100%) of *the amount of any compensation* due the employer's employees injured during the time the employer failed to comply with G.S. 97-93." N.C. Gen. Stat. § 97-94(d) (emphasis added).

As we consider the interpretation of this provision, we are mindful that "the Workers' Compensation Act should be liberally construed," *see Deese*, 306 N.C. at 277, 293 S.E.2d at 142-43, and that "the underlying purpose of the North Carolina Workers' Compensation Act is to 'provide compensation to workers whose earning capacity is diminished or destroyed by injury arising from their employment.' " *See McRae v. Toastmaster, Inc.*, 358 N.C. 488, 493, 597 S.E.2d 695, 699 (2004) (quoting *Seagraves v. Austin Co. of Greensboro*, 123 N.C. App. 228, 233, 472 S.E.2d 397, 401 (1996)).

The term "compensation" was already among the list of defined terms in Article 1 of the Workers' Compensation Act when the term "medical compensation" was added to N.C.G.S. § 97-2 in 1991. *See* ch. 703, § 1, 1991 N.C. Sess. Laws 2268. Subsection (d) of N.C.G.S. § 97-94 was added three years later when the General Assembly amended this and other provisions of Chapter 97 by the Workers' Compensation Reform Act of 1994. *See* ch. 679, § 8.1, 1994 N.C. Sess. Laws 412. Further, although N.C.G.S. § 97-94 has been amended twice since subsection (d) was first added, the Legislature has never amended the "any compensation" language. *See* ch. 215, § 115, 1998 N.C. Sess. Laws 1388; ch. 353, § 2, 1997 N.C. Sess. Laws 869. Since, at the time the Legislature added N.C.G.S. § 97-94(d), both "medical compensation" and "compensation" were among the existing defined terms for the Act, we find it relevant that the Legislature chose to expressly provide that "any compensation" may be considered in determining the amount of the civil penalty, rather than stating that the penalty could be determined based *only* on what would have been the more limiting term of "compensation." Consequently, we conclude that it does not "enlarge the ordinary meaning of the terms used by the [L]egislature" to interpret the term "any compensation" in N.C.G.S. § 97-94(d) to allow the inclusion of amounts due for "medical compensation." *See Deese*, 306 N.C. at 277, 293 S.E.2d at 143.

PUTMAN v. ALEXANDER

[194 N.C. App. 578 (2009)]

Moreover, while we recognize that the Commission's legal interpretation of a particular provision is not binding, *see id.* at 278, 293 S.E.2d at 143, the Commission's decisions in this and other cases to assess civil penalties pursuant to N.C.G.S. § 97-94(d) that include medical compensation in its determinations of the amounts to be assessed are persuasive authority on the issue. *See, e.g., Earl Williams v. James Lloyd,* I.C. Nos. 652563 & PH-1785, 2008 WL 2764610 (July 10, 2008); *Kirk Sprinkles v. Dinnertainment, Inc.,* I.C. Nos. 542926 & PH-1538, 2008 WL 2764604 (July 2, 2008); *Michael Grouse v. DRB Baseball Mgmt., Inc.,* I.C. Nos. 832331 & PH-1715, 2007 WL 4415478 (Dec. 4, 2007); *Carlton Boone v. A.D. Vinson, Sr.,* I.C. Nos. 513936 & PH-1346, 2007 WL 4375806 (Nov. 6, 2007); *Brenda D. Boisvert v. IFE, Inc.,* I.C. Nos. 582866 & PH-1607, 2007 WL 2385997 (July 18, 2007); *Billy Clark v. Henry Locklear,* I.C. Nos. 450535 & PH-1334, 2006 WL 2993091 (Sept. 19, 2006); *Billy Marshall v. Larry Pleasants,* I.C. Nos. 365891 & PH-0983, 2006 WL 2388220 (July 13, 2006); *Latasha Lowe v. R "N" S Enter., Inc.,* I.C. Nos. 259365 & PH-0910, 2006 WL 1355458 (Apr. 12, 2006); *Sherron Rae Beatty v. Michelle Loftis,* I.C. Nos. 274571 & PH-0905, 2005 WL 630205 (Feb. 10, 2005); *Kenneth Hayes v. Derek Fozart,* I.C. Nos. 231326 & PH-0673, 2003 WL 22753373 (Oct. 20, 2003); *N.C. Indus. Comm'n v. Herbie's Place, L.L.C.,* I.C. No. PH-0307, 2001 WL 1614076 (Nov. 16, 2001).

Therefore, we conclude that N.C.G.S. § 97-94(d) allows the Commission the discretion to assess civil penalties against persons who violate that subsection based upon any compensation, including medical compensation, due the injured employee and hold that the Commission did not err when it assessed civil penalties against Mrs. Patterson-Jones based on amounts calculated from both plaintiffs' disability compensation and compensation for medical expenses.

Accordingly, we affirm the Commission's Opinions and Awards.

Affirmed.

Judges McGEE and STEPHENS concur.