IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-371 and 15-374

Filed: 20 October 2015

New Hanover County, No. 12 CVS 4482 and 13 CVS 1254

POINT SOUTH PROPERTIES, LLC, and SANCO BUILDERS CORPORATION, Plaintiffs,

v.

CAPE FEAR PUBLIC UTILITY AUTHORITY and NEW HANOVER COUNTY, Defendants.

and

CB WINDSWEPT, LLC, SELLAR'S COVE, LLC, TELFAIR SUMMIT, LLC, and CB SNOWS CUT LANDING, LLC, Plaintiffs,

v.

CAPE FEAR PUBLIC UTILITY AUTHORITY and NEW HANOVER COUNTY, Defendants.

Appeal by defendants from orders entered 23 September 2014 by Judge W. Douglas Parsons in New Hanover County Superior Court. Heard in the Court of Appeals 23 September 2015.

*Shipman & Wright, LLP, by William G. Wright and Gary K. Shipman for plaintiffs-appellees.*

*Ward and Smith, P.A., by Jeremy M. Wilson and Ryal W. Tayloe for defendants-appellants.*

ZACHARY, Judge.

POINT S. PROPS., LLC V CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC V CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

In Court of Appeals Case COA 15-371, Cape Fear Public Utility Authority (CFPUA) and New Hanover County (collectively referred to as defendants) appeal from an order granting summary judgment in favor of Point South Properties, LLC and Sanco Builders Corporation (Point South plaintiffs), on plaintiffs' claims arising from the payment of impact fees assessed by defendants. Similarly, in Court of Appeals Case COA 15-374, the same defendants appeal from summary judgment entered in favor of CB Windswept, LLC; Sellar's Cove, LLC; Telfair Summit, LLC; and CB Snows Cut Landing, LLC (Windswept plaintiffs), on claims arising from plaintiffs' payment of impact fees. Pursuant to the provisions of N.C.R. App. P. 40, the cases were consolidated for oral argument by this Court. Moreover, in that "both appeals involve common questions of law, as evidenced by defendants' decision to submit virtually identical appellate briefs in each case," the Court has consolidated "these appeals for the purpose of rendering a single opinion on all issues properly before the Court." *Putman v. Alexander*, 194 N.C. App. 578, 580, 670 S.E.2d 610, 613 (2009).

On appeal defendants argue that plaintiffs' claims were barred by the statute of limitations and the doctrine of laches, that defendants were entitled to charge water and sewer impact fees to plaintiffs, and that plaintiffs' constitutional claims lack merit. We conclude that plaintiffs' claims were not barred by the statute of limitations or the doctrine of laches, that the trial court properly entered summary

POINT S. PROPS., LLC V CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC V CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

judgment for plaintiffs on their claim that defendants' imposition of impact fees was *ultra vires*, and that it is not necessary to reach the merits of plaintiffs' constitutional claims.

## I. Factual and Procedural Background

In 1983 New Hanover County created the New Hanover County Water and Sewer District (NHCWSD), which provided water and sewer service in the unincorporated areas of the county. In 1987 NHCWSD established an impact fee policy, pursuant to the terms of which the payment of a water and sewer impact fee was a precondition for a developer to receive a building permit. The rationale for this policy was that "the Water and Sewer District was working to expand out its infrastructure with the goal of providing water and sewer services to everybody throughout the county." In 2007 New Hanover County and the City of Wilmington entered into an interlocal agreement and created CFPUA, a water and sewer authority. Pursuant to the agreement creating CFPUA, all assets and liabilities of NHCWSD were transferred to CFPUA. In 2008 CFPUA replaced the previous ordinances of NHCWSD and of the City of Wilmington with a single CFPUA ordinance that did not assess impact fees for developments prior to the time that service was provided.

Plaintiffs are companies engaged in residential development in southern New Hanover County. Between 2003 and 2006, plaintiffs developed certain properties in

POINT S. PROPS., LLC V CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC V CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

New Hanover County (the subject properties). In order to obtain the necessary building permits, plaintiffs were required to pay NHCWSD impact fees associated with the provision of water and sewer service. The fees totaled approximately $238,000 paid by the Point South plaintiffs, and approximately $220,000 paid by the Windswept plaintiffs.

Aqua North Carolina, Inc., (Aqua) is a private utility company providing water and sewer service in various locations throughout North Carolina. At all times since their construction, Aqua has provided water and sewer service for the subject properties. When plaintiffs were first assessed impact fees, they informed defendants that water and sewer service was provided by Aqua and argued that they should not have to pay the fees because plaintiffs' properties were already served by Aqua and therefore the subject properties would not have any impact on the water or sewer facilities operated by NHCWSD. Defendants would not capitulate and ultimately plaintiffs paid the required fees in order to obtain building permits.

As early as 1976, defendants identified the unincorporated areas in the southern part of New Hanover County as a potential location for expansion of water and sewer service. Accordingly, defendants have included this area, which includes the subject properties, in their long range estimates of possible future demand for water and sewer service. It is undisputed, however, that defendants have never made an official decision to extend water and sewer service to any of the subject properties

POINT S. PROPS., LLC V CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC V CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

or taken any steps towards extending water and sewer service in these specific developments.

On 21 November 2012 the Point South plaintiffs filed suit against defendants, seeking the refund of the impact fees plaintiffs had paid, together with interest and attorney's fees. The Point South plaintiffs alleged that defendants' actions in assessing impact fees were *ultra vires* and violated plaintiffs' rights to due process and equal protection under the United States and North Carolina Constitutions. On 27 December 2012, defendants filed an answer and a motion to remove the Point South plaintiffs' action to the United States District Court for the Eastern District of North Carolina, on the basis of the Point South plaintiffs' inclusion in their complaint of claims arising under the U.S. Constitution. The parties each filed an amended complaint and answer in federal court. Thereafter, the Point South plaintiffs dismissed their federal constitutional claims and moved for remand to state court. On 26 March 2013 the case was remanded to the Superior Court of New Hanover County. On 5 November 2013 the Point South plaintiffs filed their second amended complaint. On 3 January 2014 defendants filed their answer, raising various defenses, including allegations that the Point South plaintiffs' claims were barred by the applicable statute of limitations and the doctrine of laches, and that the impact fees were authorized by statute. The Point South plaintiffs and defendants moved for summary judgment on 21 August 2014 and 27 August 2014, respectively.

POINT S. PROPS., LLC V CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC V CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

On 27 March 2013 the Windswept plaintiffs filed a complaint seeking damages arising from their payment of impact fees, including refund of the payments with interest and attorneys' fees. The Windswept plaintiffs' complaint similarly alleged that defendants' imposition of impact fees was *ultra vires* and violated plaintiffs' rights to due process and equal protection under the North Carolina Constitution. As the Windswept plaintiffs did not assert any claims arising under the federal constitution, the issue of removal to federal court did not arise in connection with their lawsuit. On 5 February 2014 Judge William G. Wright granted the Windswept plaintiffs' motion to amend their complaint. On the same date, the Windswept plaintiffs filed an amended class action complaint on behalf of themselves and others similarly situated. On 6 March 2014 defendants filed an answer denying the material allegations of the Windswept plaintiffs' complaint and asserting various defenses, including the statute of limitations and the doctrine of laches. The Windswept plaintiffs filed a motion for class action certification on 28 March 2014, which was denied by Judge W. Allen Cobb, Jr., on 18 July 2014. The Windswept plaintiffs filed a motion for summary judgment on 21 August 2014 and defendants filed a motion for summary judgment on 27 August 2014.

As discussed above, the procedural histories of the claims filed by the Point South plaintiffs and the Windswept plaintiffs are slightly different, given that the Point South plaintiffs initially brought claims under the federal constitution and the

POINT S. PROPS., LLC V CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC V CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

Windswept plaintiffs initially sought class certification. Nevertheless, because the Point South plaintiffs voluntarily dismissed their federal claims, and the Windswept plaintiffs did not appeal the denial of their motion for class certification, the parties' summary judgment motions raised the same issues in both cases. Accordingly, on 4 September 2014 the trial court conducted a single hearing on the summary judgment motions of the parties in both cases, at which all plaintiffs were represented by the same law firm. On 23 September 2014 the trial court entered identical orders in both cases granting summary judgment for the plaintiffs in each case. Defendants timely entered notices of appeal from both summary judgment orders. As defendants have raised the same appellate issues in both cases and the plaintiffs have presented the same defenses, in the remainder of this opinion the term "plaintiffs" shall refer to both the Point South plaintiffs and the Windswept plaintiffs.

## II.  Standard of Review

The standard of review of a trial court's summary judgment order is well-established. Under N.C. Gen. Stat. § 1A-1, Rule 56(c), summary judgment is properly entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." " ' In a motion for summary judgment, the evidence presented to the trial court must be admissible at trial, N.C.G.S. § 1A-1, Rule 56(e) [(2013)], and must be viewed in a light

POINT S. PROPS., LLC V CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC V CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

most favorable to the non-moving party.' " *Patmore v. Town of Chapel Hill, N.C.*, __ N.C. App. __ , __ , 757 S.E.2d 302, 304 (quoting *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 467, 597 S.E.2d 674, 692 (2004) (internal citation omitted)), *disc. review denied*, 367 N.C. 519, 758 S.E.2d 874 (2014). "If the trial court grants summary judgment, the decision should be affirmed on appeal if there is any ground to support the decision." *Nifong v. C.C. Mangum, Inc.*, 121 N.C. App. 767, 768, 468 S.E.2d 463, 465 (1996) (citing Shore v. Brown, 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989)). "We review trial court orders granting or denying a summary judgment motion utilizing a *de novo* standard of review." *Davis v. Woodlake Partners, LLC*, __ N.C. App. __, __, 748 S.E.2d 762, 766 (2013) (citing *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008)).

## III.  Statute of Limitations

Defendants argue initially that plaintiffs' claims are barred by the applicable statute of limitations. We disagree.

We first clarify the nature of the parties' dispute as it relates to the statute of limitations. Defendants assert that plaintiffs' claims are based on N.C. Gen. Stat. § 162A-88, which grants defendants the authority to levy fees for water and sewer "services furnished or to be furnished." Based on their contention that plaintiffs' claims arise from this statute, defendants assert that plaintiffs' claims were subject to the three year statute of limitations set out in N.C. Gen. Stat. § 1-52(2) for claims

POINT S. PROPS., LLC V CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC V CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

based upon a "liability created by statute." We conclude, however, that defendants' position is based upon a misapprehension both of plaintiffs' complaint and of the provisions of N.C. Gen. Stat. § 162A-88.

Defendants contend that the parties have no disagreement over defendants' authority to impose the impact fees at issue and that plaintiffs "simply allege that the manner in which Defendants have exercised this statutory authority has resulted in liability." In addition, defendants maintain that plaintiffs have claimed that defendants "acted improperly under these statutes by not actually providing sewer service to the Properties." Defendants do not cite a basis in the record evidence for this contention. Our own review of plaintiffs' complaint reveals that plaintiffs assert that defendants lacked the authority to impose impact fees under N.C. Gen. Stat. § 162A-88, and that in their complaint plaintiffs do *not* ask defendants to provide water or sewer service, or complain of defendants' failure to provide service. Moreover, at the hearing on the parties' summary judgment motions, plaintiffs' counsel stated that:

> [Defense counsel] says that we are alleging that there is some implied obligation to provide services within a designated period of time. Hear me again loud and clear, we're not alleging that at all. We're alleging that they levied these fees without authority, period. We don't want them to provide service. We don't need them to provide service. So, we're not alleging that there's some obligation to provide service, we're saying they had no authority to extract the fees.

POINT S. PROPS., LLC V CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC V CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

We conclude that plaintiffs neither conceded defendants' authority to levy the impact fees at issue nor based their claims on defendants' failure to provide water and sewer service for the subject properties, and that plaintiffs do not contend that defendants breached a duty owed under N.C. Gen. Stat. § 162A-88. Instead, it is defendants who raise the statute as a defense to plaintiffs' claims, by arguing that the impact fees were authorized under N.C. Gen. Stat. § 162A-88.

In support of their position that the three year statute of limitations in N.C. Gen. Stat. § 1-52(2) applies to the instant case, defendants cite several cases in which the plaintiff sought to recover damages based on a statute that established the defendant's alleged liability. For example, defendants cite *Wilson v. McLeod Oil Co.*, 327 N.C. 491, 506, 398 S.E.2d 586, 593 (1990), *rehearing denied*, 328 N.C. 336, 402 S.E.2d 844 (1991), in which the plaintiffs sought damages under N.C. Gen. Stat. § 143-215.93, which provides in part that "[a]ny person having control over oil or other hazardous substances which enters the waters of the State . . . shall be strictly liable, without regard to fault, for damages to persons or property, public or private, caused by such entry[.]" In *Wilson*, our Supreme Court held that the plaintiffs' "statutory claim based on N.C.G.S. § 143-215.93 is barred by the statute of limitations found in N.C.G.S. § 1-52(2)[.]" Defendants contend that because plaintiffs' claims are based on N.C. Gen. Stat. § 162A-88, plaintiffs are therefore seeking recompense based on a "liability created by statute." Although N.C. Gen. Stat. § 162A-88 grants defendants

POINT S. PROPS., LLC v CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC v CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

the authority to levy fees for water and sewer "services furnished or to be furnished," the statute does not impose any duty on defendants, or expose them to liability. Accordingly, the cases cited by defendants are clearly distinguishable from the instant case.

We conclude that plaintiffs' claims are not based upon defendants' alleged breach of a duty or liability established by N.C. Gen. Stat. § 162A-88, and that the statute itself does not expose defendants to liability. Therefore, we hold that plaintiffs' claims are not subject to the three year statute of limitations for a claim based on a liability created by statute.

Defendants also assert, in the alternative, that plaintiffs' claims are barred by the two year statute of limitations set out in N.C. Gen. Stat. § 1-53(1) for an "action against a local unit of government upon a contract, obligation or liability arising out of a contract, express or implied." Defendants allege that plaintiffs are seeking damages based on an "implied" contract, and assert that "[p]laintiffs apparently attempt to argue that NHCWSD was obligated to immediately provide them with sewer services." Defendants do not cite to any allegations of plaintiffs' complaint for their position, and we conclude that plaintiffs do not maintain that defendants were obligated to provide them with water and sewer service either "immediately" or within some other time limit, but that defendants lacked authority to impose the

POINT S. PROPS., LLC V CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC V CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

impact fees at issue.  Defendants' argument that plaintiffs' claims are subject to the two year statute of limitations for an action arising under a contract is without merit.

Plaintiffs contend that the ten year statute of limitations set out in N.C. Gen. Stat. § 1-56 applies to their claims.  N.C. Gen. Stat. § 1-56 provides that "[a]n action for relief not otherwise limited by this subchapter may not be commenced more than 10 years after the cause of action has accrued."  Plaintiffs argue that, because no other statute establishes the statute of limitations for their claim, the residual or "catch all" period of ten years set out in N.C. Gen. Stat. § 1-56 applies.  We agree.

Plaintiffs cite *Amward Homes, Inc. v. Town of Cary*, 206 N.C. App. 38, 698 S.E.2d 404 (2010), which applied the ten year statute of limitations in N.C. Gen. Stat. § 1-56 to the plaintiffs' claim for damages arising from payments of allegedly *ultra vires* impact fees, with Judge Jackson dissenting on the basis that plaintiffs' appeal was interlocutory.  Upon appeal of *Amward Homes* to our Supreme Court, during which time Justice Jackson was seated on the Supreme Court and did not take part in the consideration of this case, in *Amward Homes, Inc. v. Town of Cary*, 365 N.C. 305, 716 S.E.2d 849 (2011), the Supreme Court stated that the remaining members of the Court were equally divided and that "[a]ccordingly, the decision of the Court of Appeals is left undisturbed and stands without precedential value."  *Amward*, 365 N.C. at 306, 716 S.E.2d at 850.  As a result, this Court's holding in *Amward* does not constitute binding precedent.

POINT S. PROPS., LLC v CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC v CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

Plaintiffs also direct our attention to *Tommy Davis Constr., Inc. v. Cape Fear Pub. Utility Authority,* 2014 U.S. Dist. LEXIS 92449 (E.D.N.C. July 7, 2014), in which the federal district court for the Eastern District of North Carolina granted summary judgment in favor of the plaintiff. In *Tommy Davis*, which is very similar to the case at hand, the plaintiff real estate developer sued the current defendants for damages based on plaintiff's payment of impact fees. In the opinion, which discusses the same issues raised in the present appeal, the court held that the statute of limitations for the plaintiff's claims was ten years. Although neither *Amward* nor *Tommy Davis* constitutes binding precedent, we agree with the holdings of these cases that the proper statute of limitations is ten years. It is undisputed in the case at bar that plaintiffs filed suit within ten years of their payment of the challenged impact fees, and we conclude that plaintiffs' claims are not barred by the statute of limitations.

## IV. Laches

Defendants also argue that plaintiffs' claims are barred by the doctrine of laches. "We [have] previously held, 'laches is an equitable defense and is not available in an action at law.' When a '[p]laintiff's claims are legal in nature, not equitable[,]' laches cannot support judgment for the defendant." *Cater v. Barker*, 172 N.C. App. 441, 448, 617 S.E.2d 113, 118 (2005) (quoting *City-Wide Asphalt Paving, Inc. v. Alamance County*, 132 N.C. App. 533, 537, 513 S.E.2d 335, 338, *disc. rev. denied and appeal dismissed*, 350 N.C. 826, 537 S.E.2d 815 (1999) (internal citations omitted)),

POINT S. PROPS., LLC V CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC V CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

*aff'd*, 360 N.C. 357, 625 S.E.2d 778 (2006).  In the cases cited by defendants, the plaintiffs sought injunctive or other equitable relief, while in this case plaintiffs' claims are legal rather than equitable.  Therefore, the doctrine of laches is not applicable to this case.

Moreover, defendants have failed to produce evidence that they were prejudiced by plaintiffs' delay in bringing suit.  Defendants assert that they invested the impact fees "into expansion of wastewater service capacity in order to, in part, eventually provide services to communities in southern New Hanover County."  It is undisputed, however, that defendants' proposed expansion of wastewater service capacity remains at the planning stage, and that expansion is required without regard to whether or not the subject properties are ever serviced by defendants.  Defendants contend that their calculation of projected needs included reference to the subject properties, but have failed to articulate any prejudice arising from inclusion in planning documents of a figure representing the subject properties.  Defendants do not contend that they undertook any expenditures that would not have been otherwise necessary, or that their legal position has been negatively impacted by the passage of time.  We conclude that plaintiffs' claims are not barred by the doctrine of laches.

<u>V.  Authority to Impose Impact Fees</u>

POINT S. PROPS., LLC V CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC V CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

Defendants argue that the trial court erred by granting summary judgment for plaintiffs, on the grounds that defendants' imposition of impact fees was authorized by N.C. Gen. Stat. § 162A-88, which provides in relevant part that:

> The inhabitants of a county water and sewer district created pursuant to this Article are a body corporate and politic . . . [and] may establish, revise and collect rates, fees or other charges and penalties for the use of or [for] the services furnished or to be furnished by any sanitary sewer system, water system or sanitary sewer and water system of the district[.] . . .

Defendants contend that the impact fees were for services "to be furnished." We disagree, and conclude that plaintiffs produced uncontradicted evidence establishing that defendants could not present a *prima facie* case that defendants have ever decided or planned for water and sewer service "to be furnished" to the subject properties. Defendants have not responded to plaintiffs' evidence with any evidence demonstrating a genuine issue of material fact, making entry of summary judgment for plaintiffs proper in this case.

As a preliminary matter, we again spell out the nature of the parties' dispute, this time as it relates to defendants' authority to assess the impact fees at issue. At the hearing on this matter and in their appellate brief, defendants characterize their dispute with plaintiffs as an issue of whether defendants have been sufficiently prompt in arranging to extend water and sewer service to the subject properties. For example, defendants state in their appellate brief that "Plaintiffs contend that

POINT S. PROPS., LLC V CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC V CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

NHCWSD's actions were *ultra vires* because NHCWSD charged impact fees for properties that would not immediately be connected to its wastewater system." Plaintiffs' complaint, however, does not fault defendants for failing to "immediately" extend water and sewer service to the subject properties, or allege that it is the timeline of defendants' actions that renders the impact fees *ultra vires*. Rather, plaintiffs assert in their complaint that imposition of the impact fees was "beyond the statutory authority of the Defendants and any of their predecessors in interest," and assert in their appellate brief that the "Impact Fees were *ultra vires* as the fees assessed to Plaintiffs were neither for services that were furnished nor to be furnished." We conclude that the issue before us is not, as defendants have urged, whether defendants were required to "immediately" extend water and sewer service to plaintiffs after assessment of impact fees. Rather, we must decide whether there is evidence from which it might reasonably be found that defendants have ever evidenced a commitment to extending water and sewer service to the subject properties, regardless of the timeline.

The record demonstrates that defendants previously have stated their intention to extend service to specific locations and have set out a target timeline for doing so. For example, the 9 June 2010 CFPUA minutes includes the following:

> Mr. Fletchner provided an overview of [CFPUA's] anticipated CIP [Capital Improvement Program] through

POINT S. PROPS., LLC V CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC V CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

FY [Fiscal Year] 2018. Water CIP was summarized as follows:

In Fiscal Year 2011, Porters Neck customers will be added and plans for the extension of a water line down 23rd Street to Castle Hayne Road will begin.

In Fiscal Year 2012, extensions are planned for Bald Eagle Lane, and bulk sales should be underway with Pender County and Figure 8 Island. The distribution system along Kerr Avenue will be continued. FY2012 includes plans to extend water service down Carolina Beach Road to the South. . . .

In Fiscal Year 2013, . . . [the] Authority plans to expand into the Middle Sound area[.] . . . Extensions will continue in the Southern part of the County and along River Road.

In Fiscal Year 2014, the Sweeny plant expansion will be completed . . . [and the] Authority plans to extend service into the Bayshore area.

No new growth is anticipated for Fiscal Years 2015 and 2016. In Fiscal Year 2017, additional growth is expected in the Porters Neck area and along Castle Hayne road. In Fiscal Year 2018, the Authority expects to continue building the system in the Northern part of the County.

The wastewater CIP was summarized as follows:

In Fiscal Year 2011 . . .[through] 2013, the Authority will address pump station upgrades[.] . . .

In Fiscal Year 2014, the Authority expects to work closely with the New Hanover County Health Department to address failing septic systems in the Southern part of the County. No new expansion is anticipated for Fiscal Years 2015 and 2016.

POINT S. PROPS., LLC V CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC V CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

> In Fiscal Year 2017, . . . [the Authority will] continue to increase pump station capacity.
>
> In Fiscal Year 2018, the Authority expects to extend wastewater services in the Heritage Park, Wrightsboro and Prince George Estates areas.

Defendants do not allege that their capital improvement plan includes any specific commitment to extend water and sewer service to any of the developments that comprise the subject properties. Given that these plans extend through Fiscal Year 2018, it appears that the CFPUA has no plans in the foreseeable future to extend service to the subject properties.

Moreover, at all times since their construction, water and sewer service for the subject properties has been provided by Aqua, and the defendants do not have the authority to condemn Aqua's property. N.C. Gen. Stat. § 40A-5, entitled "Condemnation of property owned by other condemnors," provides that a public condemnor, as defined in N.C. Gen. Stat. § 40A-3, "may condemn the property of a private condemnor if such property is not in actual public use or not necessary to the operation of the business of the owner." N.C. Gen. Stat. § 40A-5(b). Under N.C. Gen. Stat. § 40A-42(c), if a public condemnor such as CFPUA attempts to condemn

> property [that] is owned by a private condemnor, the vesting of title in the condemnor and the right to immediate possession of the property shall not become effective until the superior court has rendered final judgment (after any appeals) that the property is not in actual public use or is not necessary to the operation of the business of the owner, as set forth in G.S. 40A-5(b).

POINT S. PROPS., LLC V CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC V CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

In this case, it is undisputed that Aqua has continuously provided water and sewer service and, as a result, that the property owned by Aqua is both in actual use and "necessary to the operation of the business of the owner." Therefore, defendants do not have the authority to exercise the right of eminent domain in order to condemn Aqua's property for their own use. In addition, the uncontroverted affidavit of Thomas J. Roberts, the president and Chief Operating Officer of Aqua, avers in relevant part that, as regards the Point South plaintiffs:

> 4. In 2005, Aqua North Carolina, Inc. was granted a Certificate of Public Convenience and Necessity for several subdivisions in southern New Hanover County, including Willow Glen at Beau Rivage subdivision and Point South Apartment complexes.
>
> . . .
>
> 6. Aqua North Carolina, Inc. has entered into sewer and water agreements with the developers of Willow Glen at Beau Rivage subdivision and Point South Apartment complexes and provides sewer and water service to the subdivision and apartment complexes.
>
> 7. To the best of my knowledge and belief no other entity, including the New Hanover County Water & Sewer District or the Cape Fear Public Utility Authority furnished any water or sewer services to Willow Glen at Beau Rivage subdivision and Point South Apartment complexes since their creation and construction.
>
> 8. To the best of my knowledge and belief no other entity, including the New Hanover County Water & Sewer District or the Cape Fear Public Utility Authority currently furnishes any water or sewer services to Willow Glen at

- 19 -

POINT S. PROPS., LLC V CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC V CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

Beau Rivage subdivision and Point South Apartment complexes.

9. Aqua North Carolina, Inc.'s intent and plan is to continue to provide water and sewer services to Willow Glen at Beau Rivage subdivision and Point South Apartment complexes and other subdivisions in southern New Hanover County, north of Snow's Cut in accordance with the terms and provisions of its tariff. Aqua North Carolina, Inc. has no current intent or plans to abandon or sell those services and infrastructure and would not anticipate taking any such action for the foreseeable future.

10. I have informed the Cape Fear Public Utility Authority of Aqua North Carolina, Inc.'s intent and plan as stated above.

11. Aqua North Carolina, Inc. has never been presented with any offer from the Cape Fear Public Utility Authority to purchase Aqua North Carolina, Inc.'s services or infrastructure in southern New Hanover County.

Mr. Roberts also executed an affidavit in regards to the Windswept plaintiffs, which was essentially identical except for the names of the relevant subdivisions. Thus, the uncontradicted record evidence establishes that Aqua has always provided water and sewer service to the subject properties, intends to continue providing water and sewer service, and that defendants have never contacted Aqua about purchasing the right to extend service to the subject properties.

To summarize, the uncontradicted record evidence shows that at the time that defendants required plaintiffs to pay impact fees and at all times since then, the following circumstances have existed:

POINT S. PROPS., LLC V CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC V CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

1. Since 1976 defendants have represented that they have a generalized long range plan to expand water and sewer service to the southern part of New Hanover County, where the subject properties are located.

2. Although defendants have stated their intention to extend water and sewer service to other specific locations within a projected timeframe, defendants have never expressed any decision or official commitment to expand service to any of the subject properties.

3. At all times, the water and sewer service for the subject properties have been provided by Aqua, and defendants have never announced an official decision to take concrete steps towards replacing Aqua as the water and sewer service provider for these properties.

5. Defendants have not contacted Aqua about purchasing Aqua's infrastructure or entered into negotiations or communications with Aqua about this possibility.

6. Defendants have never stated a timeline, or even an aspirational target year, for provision of service to any of the subject properties.

We conclude that there is no evidence in the record that defendants have ever planned for water and sewer service "to be furnished" to the subject properties. We hold that under these factual circumstances defendants have failed to show any evidentiary basis for their contention that the fees were for service "to be furnished."

If we were to accept defendants' contention that the documents indicating a generalized goal of extending water and sewer service to unspecified parts of New Hanover County at an unspecified time in the indefinite future are sufficient to authorize imposition of impact fees for services "to be furnished," then fees could be

POINT S. PROPS., LLC V CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC V CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

imposed whenever a water and sewer board expressed even the vaguest intention to *possibly* extend service at some unspecified time in the future. This would be an absurd result, and it is well established that:

> "The Court will not adopt an interpretation which resulted in injustice when the statute may reasonably be otherwise consistently construed with the intent of the act. Obviously, the Court will, whenever possible, interpret a statute so as to avoid absurd consequences."

*Sutton v. Aetna Casualty & Surety Co.*, 325 N.C. 259, 265, 382 S.E.2d 759, 763 (1989) (quoting *Insurance Co. v. Chantos*, 293 N.C. 431, 440, 238 S.E.2d 597, 603 (1977)).

This Court's holding that defendants have failed to show that impact fees were assessed for water and sewer service "to be furnished" is based solely upon the specific facts of this case, in which defendants produced *no* evidence that they had ever made a decision to furnish water and sewer service to the subject properties, and had taken *no* steps towards extending service to these locations. Accordingly, this Court expressly declines to state any criteria, guidelines, or standards for determination of whether the evidence in a particular case is adequate to support assessment of impact fees for services "to be furnished."

Moreover, it is noted that in *McNeill v. Harnett County*, 327 N.C. 552, 570, 398 S.E.2d 475, 485 (1990), our Supreme Court held "that the provisions of N.C.G.S. § 162A-88 authorizing user fees for services 'to be furnished' [are] not limited to the financing of maintenance and improvements of existing customers." In *McNeill*,

POINT S. PROPS., LLC V CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC V CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

however, there was no question that sewer service would be provided to the plaintiffs.

On the facts of this case, we agree with the analysis in *Tommy Davis*, which distinguished *McNeill* and stated that:

> [D]efendants in the instant matter have been developing "plans" to provide water and sewer services to the southern portion of New Hanover County, which includes [the subject properties], since 1976. As plaintiff points out, these plans are at best vague, and some plans even indicate that water and sewer services will not need to be provided by the government because service is already available through Aqua NC. Defendants have not taken concrete steps to actually provide water and sewer services to [the subject properties]. As of the time of filing the instant motions, Aqua NC continued to provide services to [the properties], eight years after plaintiff paid the impact fees, and Aqua NC intends to continue to provide those services. Aqua NC is unaware of any plan by any other entity, including defendants, to ever provide water and sewer services to [the subject properties] or any other areas in southern New Hanover County that are serviced by Aqua NC. Because no clear steps have been taken over the past decade since [the properties were] first permitted for defendants to provide water and sewer services, the assessment of impact fees was not a reasonable exercise of defendants' powers, but an *ultra vires* act beyond their statutory authority.

*Tommy Davis*, 2014 U.S. Dist. LEXIS 92449 at *9. We conclude that plaintiffs produced evidence showing that defendants could not make a *prima facie* case that the impact fees were properly imposed for water and sewer service "to be furnished," and that defendants failed to produce evidence to rebut plaintiffs' showing. As a result, the trial court did not err by granting summary judgment in favor of plaintiffs.

POINT S. PROPS., LLC V CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC V CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

In reaching this conclusion, we have rejected defendants' arguments urging us to reach a contrary result. Defendants direct our attention to N.C. Gen. Stat. § 153A-4, which states that:

> It is the policy of the General Assembly that the counties of this State should have adequate authority to exercise the powers, rights, duties, functions, privileges, and immunities conferred upon them by law. To this end, the provisions of this Chapter and of local acts shall be broadly construed and grants of power shall be construed to include any powers that are reasonably expedient to the exercise of the power.

Nonetheless, "[w]hen the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning." *Lemons v. Old Hickory Council,* 322 N.C. 271, 276, 367 S.E.2d 655, 658 (1988) (citations omitted). The language of N.C. Gen. Stat. § 162A-88 is clear and unambiguous:

> Section 153A-4 does state that any legislative act affecting counties should be "broadly construed and grants of power shall be construed to include any powers that are reasonably expedient to the exercise of the power." N.C. Gen. Stat. § 153A-4 [(2013)]. . . . But, in conjunction with our general rules of statutory construction, only if there is an ambiguity in a statute found in chapter 153A should section 153A-4 be part of the courts' interpretative process. If, however, the statute is clear on its face, the plain language of the statute controls and section 153A-4 remains idle.

POINT S. PROPS., LLC V CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC V CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

*Durham Land Owners Ass'n v. County of Durham,* 177 N.C. App. 629, 633-34, 630 S.E.2d 200, 203, *disc review denied*, 360 N.C. 532, 633 S.E.2d 678 (2006). We conclude that N.C. Gen. Stat. § 153A-4 is not applicable to the present case.

Defendants also contend that their assessment of impact fees was authorized under local ordinances. Assuming, without deciding, that the local ordinances cited by defendants might grant a broader right to impose impact fees than is allowed under N.C. Gen. Stat. § 162A-88, N.C. Gen. Stat. § 162A-19 provides that "[a]ll general, special or local laws, or parts thereof, inconsistent herewith are hereby declared to be inapplicable to the provisions of this Article." We conclude that defendants cannot rely upon a local ordinance to extend the right to assess impact fees beyond what is allowed under N.C. Gen. Stat. § 162A-88.

Defendants have also filed a Memorandum of Additional Authority citing this Court's unpublished opinion in *Quality Built Homes Inc. v. Town of Carthage*, 2015 N.C. App. LEXIS 656 (N.C. Ct. App. Aug. 4, 2015). "An unpublished opinion 'establishe[s] no precedent and is not binding authority[.]' " *Long v. Harris*, 137 N.C. App. 461, 470, 528 S.E.2d 633, 639 (2000) (quoting *United Services Automobile Assn. v. Simpson*, 126 N.C. App. 393, 396, 485 S.E.2d 337, 339, *disc. review denied*, 347 N.C. 141, 492 S.E.2d 37 (1997)). Furthermore, the primary issue in *Quality Built Homes* was whether the Town of Carthage was authorized to impose fees for service "to be furnished," and the case did not address the question of whether the assessment of

POINT S. PROPS., LLC V CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC V CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

impact fees was a reasonable exercise of governmental authority under circumstances similar to those presented in this appeal to this Court. We conclude that *Quality Built Homes* does not indicate that we should reach a different result in the present case.

Finally, defendants argue in their appellate brief that "genuine issues of material fact remain regarding the amount of damages to which plaintiffs may be entitled." This argument is without merit.

Plaintiffs produced records in discovery detailing the impact fees that were assessed against them, and defendants do not dispute the accuracy of the amounts stated in these records. Defendants' designee, Mr. Frank Styers, CFPUA's Chief Operating Officer, acknowledged in his deposition that these documents were defendants' business records and accurately set out the impact fees at issue. **(Styers depo 72-78)** Thus, defendants do not challenge plaintiffs' contentions regarding the amounts that were paid. Instead, defendants argue that a genuine issue of material fact arises from the fact that in some instances plaintiffs paid the fees directly, while in other instances the fees were initially paid by a builder or other third party who was then reimbursed by plaintiffs. "An issue is 'genuine' if it can be proven by substantial evidence and a fact is 'material' if it would constitute or irrevocably establish any material element of a claim or a defense." *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982) (citation omitted). Defendants do not articulate

POINT S. PROPS., LLC V CAPE FEAR PUB. UTIL. AUTH. AND
CB WINDSWEPT, LLC V CAPE FEAR PUB. UTIL. AUTH.

*Opinion of the Court*

a defense to plaintiffs' claims that would be established by evidence that plaintiffs paid some of the impact fees directly and others as reimbursement to a builder. Defendants also assert, without citation to any evidence, that plaintiffs may have increased the sale price of the subject properties or "passed on" the impact fees to purchasers of homes. Defendants' contention in this regard is mere speculation. In addition, defendants do not argue that the legal relationship of the parties would be affected if, as defendants allege, plaintiffs included their expenses, including impact fees, in their calculation of the price at which properties were sold. We conclude that defendants have failed to demonstrate that a genuine issue of material fact exists that made it improper for the trial court to award summary judgment in favor of plaintiffs.

We have held that the trial court did not err by granting summary judgment for plaintiffs on their claim that, on the facts of this case, defendants' imposition of impact fees was *ultra vires* and beyond their authority, and for recovery of plaintiffs' damages resulting therefrom. Having reached this conclusion, we have no need to address the parties' arguments regarding plaintiffs' claims under the North Carolina Constitution. We hold that the trial court did not err and that its order should be

AFFIRMED.

Judges STEPHENS and McCULLOUGH concur.