ZACHARY, Judge.
 

 *145
 
 Duron Hampton (plaintiff) appeals from an order granting summary judgment in favor of Andrew Scales (defendant) on plaintiff's claim of legal malpractice against defendant. Defendant previously represented plaintiff on eight charges of second-degree rape and one charge of crime against nature. On appeal plaintiff argues that the trial court erred by entering summary judgment against him, on the grounds that the evidence before the trial court presented a genuine issue of material fact on the issue of whether defendant's representation of plaintiff on these charges met the applicable standard of care. We conclude that the trial court did not err by granting summary judgment for defendant and that its order should be affirmed.
 

 *146
 

 I. Factual and Procedural Background
 

 On 30 June 2011, Sharon Thomas reported to Albemarle Police Officer Star Gaines that her fifteen-year-old daughter "Tina"
 
 [1]
 
 had been having sex with a twenty-one year old man whom Tina identified as "Run Run." Plaintiff has admitted that he was previously known by the nickname Run Run. Detective Cindi Rinehart investigated Ms. Thomas's allegation. During this investigation, Tina was evaluated at the Butterfly House Children's Advocacy House ("Butterfly House"), where she was interviewed by Registered Nurse Amy Yow, a licensed forensic interviewer and a certified sexual assault nurse examiner. Nurse Yow first conducted a videotaped interview of Tina, during which Tina told Nurse Yow that she had previously had sexual relations with three men, whom she identified as "DeShawn," "Frankie," and "Cameron." At the end of the videotaped portion of the interview, Nurse Yow and Tina were joined by certified nurse midwife Rebecca Huneycutt, who performed a comprehensive physical examination of Tina. As Nurse Yow, Nurse Huneycutt, and Tina walked to the examination room, Tina told the two nurses that she had also had sex with plaintiff, whom she identified as Run Run. Officer Gaines, Detective Rinehart, Nurse Yow, and Nurse Huneycutt each executed an affidavit averring that Tina had stated that she had sex with plaintiff. In addition, Detective Rinehart obtained a statement from D.H., a friend of Tina's, in which D.H. stated that Tina had called D.H. on more than ten occasions to talk about having sexual intercourse with plaintiff.
 

 Detective Rinehart also reviewed Tina's school records. In 2002, when Tina was six years old and in kindergarten, testing indicated that her I.Q. was around 64 and she was classified by the school system as being an "educable mentally disabled" student. When Tina was reevaluated in 2009, she was
 
 *482
 
 classified as having a "mild" intellectual disability. In her interview with Nurse Yow, Tina reported that she was in a "special class" at school.
 

 On 14 February 2012, arrest warrants were issued charging plaintiff with eight charges of second-degree rape, in violation of N.C. Gen.Stat. § 14-27.3,
 
 [2]
 
 and one charge of crime against nature in violation of N.C. Gen.Stat. § 14-177. The charges of second-degree rape alleged that plaintiff had engaged in intercourse with a person who is mentally
 
 *147
 
 disabled. These warrants were served on plaintiff while he was in the Stanly County jail on other charges. After plaintiff was charged with these offenses, he sent a note to Detective Rinehart asking her to obtain "a good plea offer" that would enable plaintiff to be released from jail and return to his wife and child.
 

 On 2 March 2012, defendant was appointed by the Court to represent plaintiff on these charges. Plaintiff sent several notes to defendant. None of the letters in the record that were written by plaintiff to defendant include any assertion by plaintiff that he was factually innocent of the charged offenses or that he wanted a jury trial. Instead, all of plaintiff's notes urgently requested defendant to negotiate a plea bargain that would enable plaintiff to be released from jail as soon as possible. For example, on one occasion plaintiff wrote the following to defendant:
 

 Sir, I am not trying to fight these charges in no way. I have a wife and daughter at home that desperately need me. You are the best attorney for this case. I just want to plea out. These charges are from last year before I went to prison, and I'm truly a changed person with responsibilities. I was attending college before these new charges. I am no longer breaking laws, getting in all kinds of mess.... I'm asking for you [to] please get my life back. This is it for me. My family is my everything. Please move speedily on a plea of any kind of probation. I'll take it.
 

 Defendant was successful in negotiating a plea bargain with the prosecutor and on 27 April 2012, plaintiff pleaded guilty to one charge of taking indecent liberties in violation of N.C. Gen.Stat. § 14-202.1 (2014), a Class F felony. Plaintiff entered a guilty plea pursuant to
 
 N.C. v. Alford,
 

 400 U.S. 25
 
 ,
 
 91 S.Ct. 160
 
 ,
 
 27 L.Ed.2d 162
 
 (1970). "A defendant enters into an
 
 Alford
 
 plea when he proclaims he is innocent, but intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt."
 
 State v. Chery,
 

 203 N.C.App. 310
 
 , 314,
 
 691 S.E.2d 40
 
 , 44 (2010) (citation omitted). In exchange for plaintiff's guilty plea, the prosecutor dismissed the eight charges of second-degree rape and the charge of crime against nature. Plaintiff was released from jail, placed on probation, and required to register with the North Carolina Sex Offender Registry. Additional details about the charges against plaintiff will be discussed below, as relevant to the issues raised on appeal.
 

 About a year after pleading guilty to taking indecent liberties, plaintiff obtained a signed statement from Tina stating that she and plaintiff had not had any sexual contact. Plaintiff retained defendant to prepare
 
 *148
 
 a motion for appropriate relief, and Mr. Patrick Currie was appointed to represent plaintiff in court. A hearing on plaintiff's motion for appropriate relief was conducted by Judge Anna Wagoner on 13 May 2013, at which testimony was elicited from Ms. Thomas and Tina in support of plaintiff's contention that in 2011 Tina had falsely accused him of having sexual relations with her. On 24 May 2013, Judge Wagoner entered an order granting plaintiff's motion for appropriate relief, setting aside his guilty plea, dismissing all charges against plaintiff related to sexual contact with Tina, and removing plaintiff from the Sex Offender Registry.
 

 On 24 July 2014, plaintiff filed the instant suit against defendant seeking damages for legal malpractice and asserting that defendant had been negligent in his representation of plaintiff on the criminal charges discussed above. Plaintiff alleged that defendant had failed to "properly investigate" the charges
 
 *483
 
 against him and had mistakenly told plaintiff that during the videotaped portion of Tina's interview she named plaintiff as one of the men with whom she had sex. Plaintiff did not identify any specific damages, but alleged generally that as a "direct and proximate result" of defendant's negligence plaintiff had "sustained pecuniary damages, mental anguish and emotional distress[.]" Defendant filed a motion for summary judgment on 1 July 2015. Following a hearing on defendant's motion, the trial court entered an order on 13 July 2015 granting summary judgment in favor of defendant and dismissing plaintiff's complaint. Plaintiff has appealed to this Court from the summary judgment order entered against him.
 

 II. Standard of Review
 

 Pursuant to the provisions of N.C. Gen.Stat. § 1A-1, Rule 56(c) (2014), summary judgment is properly entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen.Stat. § 1A-1 Rule 56(e) requires that evidence presented to the trial court on a motion for summary judgment must be admissible at trial. " 'When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party.' "
 
 Ron Medlin Constr. v. Harris,
 

 364 N.C. 577
 
 , 580,
 
 704 S.E.2d 486
 
 , 488 (2010) (quoting
 
 In re Will of Jones,
 

 362 N.C. 569
 
 , 573,
 
 669 S.E.2d 572
 
 , 576 (2008) ).
 

 The party moving for summary judgment bears the burden of establishing that there is no triable issue of material fact. This burden may be met "by proving that an essential
 
 *149
 
 element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim."
 

 DeWitt v. Eveready Battery Co.,
 

 355 N.C. 672
 
 , 681,
 
 565 S.E.2d 140
 
 , 146 (2002) (quoting
 
 Collingwood v. G.E. Real Estate Equities,
 

 324 N.C. 63
 
 , 66,
 
 376 S.E.2d 425
 
 , 427 (1989) ) (other citation omitted). " '[O]nce the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a
 
 prima facie
 
 case at trial.' "
 
 Pacheco v. Rogers & Breece, Inc.,
 

 157 N.C.App. 445
 
 , 448,
 
 579 S.E.2d 505
 
 , 507 (2003) (quoting
 
 Gaunt v. Pittaway,
 

 139 N.C.App. 778
 
 , 784-85,
 
 534 S.E.2d 660
 
 , 664 (2000),
 
 cert. denied,
 

 353 N.C. 371
 
 ,
 
 547 S.E.2d 810
 
 (2001) ).
 

 In the course of a trial court's ruling on a motion for summary judgment, " '[a] verified complaint may be treated as an affidavit if it (1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein.' "
 
 Merritt, Flebotte, Wilson, Webb & Caruso, PLLC v. Hemmings,
 

 196 N.C.App. 600
 
 , 605,
 
 676 S.E.2d 79
 
 , 83-84 (2009) (quoting
 
 Page v. Sloan,
 

 281 N.C. 697
 
 , 705,
 
 190 S.E.2d 189
 
 , 194 (1972) ). "On the other hand, 'the trial court may not consider an unverified pleading when ruling on a motion for summary judgment.' Plaintiff's complaint in this case was not verified, so it could not be considered in the course of the trial court's deliberations concerning Defendant's summary judgment motion."
 
 Rankin v. Food Lion,
 

 210 N.C.App. 213
 
 , 220,
 
 706 S.E.2d 310
 
 , 315-16 (2011) (quoting
 
 Tew v. Brown,
 

 135 N.C.App. 763
 
 , 767,
 
 522 S.E.2d 127
 
 , 130 (1999),
 
 disc. review improvidently allowed,
 

 352 N.C. 145
 
 ,
 
 531 S.E.2d 213
 
 (2000) ).
 

 "We review a trial court's order granting or denying summary judgment
 
 de novo.
 
 'Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal."
 
 Craig v. New Hanover Cty. Bd. of Educ.,
 

 363 N.C. 334
 
 , 337,
 
 678 S.E.2d 351
 
 , 354 (2009) (quoting
 
 In re Appeal of The Greens of Pine Glen Ltd. P'ship,
 

 356 N.C. 642
 
 , 647,
 
 576 S.E.2d 316
 
 , 319 (2003) ).
 

 In a negligence action, "summary judgment for defendant is correct where the evidence fails to establish negligence on the part of defendant ... or determines that the
 
 *484
 
 alleged negligent conduct complained of was not the proximate cause of the injury."
 
 *150
 

 Bogle v. Power Co.,
 

 27 N.C.App. 318
 
 , 321,
 
 219 S.E.2d 308
 
 , 310 (1975),
 
 cert. denied,
 

 289 N.C. 296
 
 ,
 
 222 S.E.2d 695
 
 (1976) (citation omitted). " 'If the trial court grants summary judgment, the decision should be affirmed on appeal if there is any ground to support the decision.' "
 
 Point South v. Cape Fear Public Utility,
 
 ---N.C.App. ----, ----,
 
 778 S.E.2d 284
 
 , 287 (2015) (quoting
 
 Nifong v. C.C. Mangum, Inc.,
 

 121 N.C.App. 767
 
 , 768,
 
 468 S.E.2d 463
 
 , 465 (1996) ).
 

 III. Legal Malpractice: General Principles
 

 It is axiomatic that:
 

 [W]hen an attorney engages in the practice of the law and contracts to prosecute an action in behalf of his client, he impliedly represents that (1) he possesses the requisite degree of learning, skill, and ability necessary to the practice of his profession and which others similarly situated ordinarily possess; (2) he will exert his best judgment in the prosecution of the litigation entrusted to him; and (3) he will exercise reasonable and ordinary care and diligence in the use of his skill and in the application of his knowledge to his client's cause.
 

 Hodges v. Carter,
 

 239 N.C. 517
 
 , 519,
 
 80 S.E.2d 144
 
 , 145-46 (1954) (citations omitted). In the present case, plaintiff does not assert that defendant lacked "the requisite degree of learning, skill, and ability" or that he failed to exercise his best judgment. Instead, plaintiff's claim of legal malpractice is based on his assertion that defendant failed to "exercise reasonable and ordinary care and diligence" in his representation of plaintiff.
 

 A plaintiff who seeks damages on a claim of professional malpractice based on negligence by an attorney "has the burden of proving by the greater weight of the evidence: (1) that the attorney breached the duties owed to his client, as set forth by
 
 Hodges,
 

 239 N.C. 517
 
 ,
 
 80 S.E.2d 144
 
 , and that this negligence (2) proximately caused (3) damage to the plaintiff."
 
 Rorrer v. Cooke,
 

 313 N.C. 338
 
 , 355,
 
 329 S.E.2d 355
 
 , 366 (1985). " 'To establish that negligence is a proximate cause of the loss suffered, the plaintiff must establish that the loss would not have occurred but for the attorney's conduct.' "
 
 Belk v. Cheshire,
 

 159 N.C.App. 325
 
 , 330,
 
 583 S.E.2d 700
 
 , 704 (2003) (quoting
 
 Rorrer,
 
 at 361,
 
 329 S.E.2d at
 
 369 ).
 

 IV. Legal Analysis
 

 As discussed above, the elements of a claim for legal malpractice are a breach of the attorney's duty to his or her client, and damages that proximately result from the attorney's negligence. In the present case,
 
 *151
 
 we conclude that plaintiff has failed to produce evidence of a
 
 prima facie
 
 case that the acts and omissions upon which plaintiff bases his negligence claim, even if proven, constituted a breach of the standard of care or proximately caused damage to plaintiff.
 

 A. Defendant's Evidence Shifted the Burden of Proof
 

 It is undisputed that defendant repeatedly directed defendant to negotiate a plea bargain with the prosecutor, under the terms of which plaintiff would be released from jail and allowed to rejoin his family. There is no evidence in the record to suggest that plaintiff ever indicated any desire to resolve the charges against him at a jury trial. Consequently, the question raised by plaintiff's complaint was whether defendant's representation of plaintiff met the standard of care for an attorney representing a criminal defendant who has directed his counsel that his preference is to resolve the charges against him with a plea arrangement. The standard of care for an attorney representing a criminal defendant requires more extensive investigation and preparation for a jury trial than for entry of a plea of guilty. Nonetheless, we agree with plaintiff's general proposition that a client's preference for a plea bargain as opposed to a trial does not relieve the attorney of the duty to exercise reasonable care and diligence in negotiating an appropriate plea arrangement and representing the client's interests in this regard.
 

 In this case, plaintiff was charged with eight Class C felonies and one Class I felony, for which he was potentially subject to imprisonment for more than forty years. Had
 
 *485
 
 the charges gone to trial, the primary evidence against plaintiff would have been Tina's testimony.
 
 [3]
 
 In addition, the record includes extensive corroborating evidence, including the following:
 

 1. The affidavit of Albemarle Police Officer Gaines stating that on 30 July 2011 Ms. Thomas reported that her daughter, Tina, had admitted having sex with plaintiff.
 

 2. A statement from D.H. that Tina had called her a number of times to discuss having sex with plaintiff.
 

 3. The affidavit of Nurse Yow stating that after the initial videotaped interview ended and as she, Tina, and Nurse Huneycutt were walking to the medical examination
 
 *152
 
 room, Tina told the two nurses that she had had sex with plaintiff.
 

 4. The affidavit of Nurse Huneycutt stating that during her physical examination of Tina she asked Tina if she had anything else to report and that Tina "promptly responded that she had had sexual relations with [plaintiff]."
 

 5. The affidavit of Detective Rinehart summarizing her investigation of the charges, including her interview with Ms. Thomas, review of Tina's school records, interview of D.H., and her review of Tina's interview and examination at Butterfly House.
 

 6. Tina's school records, which established that she was intellectually disabled.
 

 On this record, we conclude that the charges against plaintiff were supported by adequate evidence to take the case to the jury. Defendant successfully negotiated a plea arrangement pursuant to the terms of which plaintiff pleaded guilty to one charge of taking indecent liberties, agreed to register with the North Carolina Sex Offender Registry, and would be released from jail, in exchange for which the State dismissed the numerous other serious charges against plaintiff. Given plaintiff's insistence on pleading guilty, the seriousness of the charges against plaintiff, and the strength of the evidence supporting these charges, the plea bargain arranged by defendant appears to reflect a reasonable exercise of professional skill on defendant's part.
 

 Moreover, the record reflects that defendant was aware of both the strengths and weaknesses of the State's case. At the hearing during which plaintiff pleaded guilty to taking indecent liberties, plaintiff shared the following with the court:
 

 DEFENDANT: Your Honor, this is a case Mr. Hampton and I have spoken at length [about]. He's obviously, very conflicted. He's got a wife and a young daughter. And why he's entering the
 
 Alford
 
 plea, because of the liability, the criminal liability that he's facing, exposed to, with [the] amount of charges that is a Class C felony. And actually, I think the District Attorney's office was seeking to send superseding indictments to the grand jury for the B1 felonies. So therefore, even more exposure.
 

 I explained to him the risks. And with hesitation and with concern, he's wanting to take the plea. I've asked him
 
 *153
 
 numerous times if he was sure, and he says that he is, but he's doing it because-not because he's guilty, but because he wants to get out and be with his family.
 

 I've made abundantly sure that he's wanting to do this. Again, he's hesitant, but is doing it for those reasons. That's why we're entering it as an
 
 Alford
 
 plea.
 

 Your Honor, there's certainly holes in this case. Statements that the victim gave doesn't mention Mr. Hampton the first time.
 
 Then she goes to the Butterfly House, and then Mr. Hampton's name comes up, and then it happens eight or nine times. Then there's, apparently, a friend that she told that to.
 

 But there's also people, when she's mentioning her sexual partners, doesn't mention Mr. Hampton. The dates of offense happened for the course of a month in May of last year. It was just reported in February of this year. So there's definitely issues in the case.
 

 *486
 
 And
 
 I explained to Mr. Hampton that those are triable issues
 
 and we'd have to cross-examine the witness at a trial.
 
 And I advised him that [there] would be things that would affect her credibility,
 
 things that would look good for his case in his defense.
 

 He has decided to not go that route because of what it could mean if the jury believed her. And I understand what he's doing, respect what he's doing in a way to get out and support his family. Young daughter is his first child.
 

 But he's very upset about it, as you can tell. And I just wanted to be clear and want the court to make sure they're clear with him that this is what he's doing, he's doing it and he knows what he's doing and he has other options. And I've explained that to him, but I want to make sure we're good there. (emphasis added).
 

 We conclude that defendant produced uncontradicted evidence that (1) plaintiff directed him to negotiate a plea bargain; (2) defendant's investigation of the charges against plaintiff was sufficient to apprise defendant of the general strengths and weaknesses of the State's evidence; (3) defendant negotiated a plea bargain that met plaintiff's expressed requirement that he be released from jail; and (4) the terms of
 
 *154
 
 the plea arrangement were reasonable, given the strength of the State's case against plaintiff and plaintiff's potential exposure to a lengthy prison term.
 

 This evidence was sufficient to establish that defendant did not breach his duty to plaintiff, and to shift the burden to plaintiff to produce admissible evidence demonstrating that he could make at least a
 
 prima facie
 
 case that defendant breached his duty of care to plaintiff and that defendant's negligence proximately caused damage to plaintiff. "If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmovant to present specific facts which establish the presence of a genuine factual dispute for trial."
 
 Will of Jones,
 

 362 N.C. at 573
 
 ,
 
 669 S.E.2d at 576
 
 .
 

 B. Failure to Hire an Expert or a Private Investigator
 

 Plaintiff's argument that defendant breached his duty to exercise reasonable care and diligence in representing plaintiff is based upon the following allegations:
 

 1. Plaintiff alleges generally that defendant was negligent in that he failed to "properly investigate" the charges against him, and specifically that defendant failed to consider hiring an expert or a private investigator.
 

 2. Plaintiff alleges that defendant was negligent in that he may have failed to review the videotape of Tina's interview at Butterfly House and that defendant inaccurately told plaintiff that Tina had named him as one of her sexual contacts on the video.
 

 We first consider plaintiff's allegation that defendant was negligent by failing to properly consider whether he should seek funds to hire an expert or private investigator. Defendant was appointed by the court to represent plaintiff, who qualified for appointment of counsel as an indigent criminal defendant. Therefore, before defendant could retain an expert or private investigator, he would have needed to seek funding from the Stanly County superior court.
 

 In order to receive state-funded expert assistance, an indigent defendant must make "a particularized showing that: (1) he will be deprived of a fair trial without the expert assistance, or (2) there is a reasonable likelihood that it would materially assist him in the preparation of his case." ... Furthermore, "the State is not required by law to finance a fishing expedition for the defendant in the
 
 *155
 
 vain hope that 'something' will turn up." " Mere hope or suspicion that such evidence is available will not suffice."
 

 State v. McNeill,
 

 349 N.C. 634
 
 , 650,
 
 509 S.E.2d 415
 
 , 424 (1998) (quoting
 
 State v. Parks,
 

 331 N.C. 649
 
 , 656,
 
 417 S.E.2d 467
 
 , 471 (1992),
 
 State v. Alford,
 

 298 N.C. 465
 
 , 469,
 
 259 S.E.2d 242
 
 , 245 (1979), and
 
 State v. Tatum,
 

 291 N.C. 73
 
 , 82,
 
 229 S.E.2d 562
 
 , 568 (1976) ).
 

 Plaintiff has failed to indicate a proposed area of expertise for the "expert" or any
 
 *487
 
 specific role for the expert as part of negotiating a plea bargain for plaintiff. Similarly, plaintiff has not articulated a basis for a request to obtain funds from the Stanly County superior court with which to hire an investigator. Neither plaintiff's evidence at the trial level nor his appellate brief addresses the legal standard for securing funds for expert or investigative assistance for an indigent criminal defendant, and plaintiff has not advanced an argument that a hypothetical request by defendant for funds with which to hire an expert or an investigator would have met this standard. In the absence of any specific evidentiary or legal goal to be pursued by the expert or investigator posited by plaintiff, their roles as experts would appear to be speculative and, as stated in
 
 Parks,
 
 "the State is not required by law to finance a fishing expedition for the defendant in the vain hope that 'something' will turn up." We conclude that plaintiff has failed to offer any evidence, or even a colorable argument, that plaintiff would have been entitled to funds for the services of an expert or an investigator, or that defendant was remiss in not attempting to obtain funds for this purpose.
 

 C. Video Recording of Nurse Yow's Interview of Tina
 

 The other basis of plaintiff's claim for legal malpractice is plaintiff's allegation that defendant failed to properly review the videotaped interview of Tina or to accurately convey its contents to plaintiff. For the reasons discussed below, we conclude that plaintiff is not entitled to relief on the basis of this argument.
 

 Plaintiff's legal malpractice action is premised almost entirely upon his allegation that, although Tina did not name plaintiff as a person with whom she had previously had sex during her videotaped interview, defendant erroneously told plaintiff that he had been identified by Tina on the video. In his appellate brief, plaintiff supports this contention with a detailed recitation of questions that Nurse Yow asked Tina and of her answers, in order to establish that during the videotaped interview Tina named three men with whom she had sex in the past but did not name plaintiff, even when Nurse Yow asked her if she had anything to add. It was only after the videotape was turned off and Nurse Huneycutt joined
 
 *156
 
 Tina and Nurse Yow, when Nurse Huneycutt asked Tina if she had anything else to share, that Tina stated that she had also had sex with plaintiff.
 

 The record on appeal includes three CDs containing identical depictions of the videotaped interview between Tina and Nurse Yow. In each of these CDs the interview ends
 
 before
 
 Nurse Yow asks Tina to identify the individuals with whom she has had sexual relations, and the CDs
 
 do not include
 
 the part of the interview upon which plaintiff bases most of his arguments. N.C. R.App. P. 9(a) provides in relevant part:
 

 In appeals from the trial division of the General Court of Justice, review is solely upon the record on appeal, the verbatim transcript of proceedings, if one is designated, ... and any [other] items filed with the record on appeal pursuant to Rule 9(c) and 9(d). Parties may cite any of these items in their briefs and arguments before the appellate courts.
 

 "Pursuant to the North Carolina Rules of Appellate Procedure, our review is limited to the record on appeal ... and any other items filed with the record in accordance with Rule 9(c) and 9(d)."
 
 Kerr v. Long,
 

 189 N.C.App. 331
 
 , 334,
 
 657 S.E.2d 920
 
 , 922 (2008). Our appellate courts " 'can judicially know only what appears of record.' ... 'An appellate court cannot assume or speculate that there was prejudicial error when none appears on the record before it.' "
 
 State v. Price,
 

 344 N.C. 583
 
 , 593-94,
 
 476 S.E.2d 317
 
 , 323 (1996) (quoting
 
 Jackson v. Housing Authority,
 

 321 N.C. 584
 
 , 586,
 
 364 S.E.2d 416
 
 , 417 (1988), and
 
 State v. Moore,
 

 75 N.C.App. 543
 
 , 548,
 
 331 S.E.2d 251
 
 , 254,
 
 disc. rev. denied,
 

 315 N.C. 188
 
 ,
 
 337 S.E.2d 862
 
 (1985) ). Because the videotaped interview that was made a part of the record and was provided to this Court in the form of three identical CDs does not include the questions and answers discussed by plaintiff on appeal, we cannot consider these alleged statements in our analysis of the trial court's summary judgment order.
 

 For the reasons discussed above, we conclude that plaintiff failed to establish that he could offer a
 
 prima facie
 
 case of legal malpractice
 
 *488
 
 based on either defendant's alleged failure to properly consider hiring an investigator or expert, or upon defendant's alleged failure to accurately inform plaintiff that Tina did not identify him during the videotaped interview.
 

 D. Damages
 

 Plaintiff has also failed to identify any damages resulting from defendant's alleged negligence in representing him on the criminal charges discussed above. In his complaint, plaintiff makes a generalized
 
 *157
 
 allegation that he "sustained pecuniary damages, mental anguish and emotional distress and is entitled to recover damages in a sum in excess of ... $10,000." This is a conclusory assertion without reference to specific factual evidence; moreover, plaintiff's complaint is unverified and therefore was not proper for the trial court's consideration in ruling on defendant's motion for summary judgment. In his affidavit, plaintiff avers that if defendant had informed him that Tina did not identify him during the videotaped interview, he would have "continued to reject the plea to indecent liberties with a minor[.]" However, plaintiff does not identify any damages that he sustained as a result of pleading guilty. We have carefully reviewed the record and conclude that plaintiff has failed to properly allege or to support with evidence any basis upon which to conclude that defendant's alleged negligence, even if it were proven, caused plaintiff any damage.
 

 "It is well established that in order to prevail in a negligence action, plaintiffs must offer evidence of the essential elements of negligence: duty, breach of duty, proximate cause, and damages."
 
 Camalier v. Jeffries,
 

 340 N.C. 699
 
 , 706,
 
 460 S.E.2d 133
 
 , 136 (1995) (citation omitted). Because plaintiff failed to offer evidence of the element of damages, we are unable to evaluate whether defendant's alleged malpractice proximately caused damage to plaintiff.
 

 As discussed above, we have concluded that defendant offered evidence that his representation of plaintiff met the standard of care for an attorney representing a criminal defendant who wishes to enter a plea of guilty, and that plaintiff has failed to produce evidence either that defendant breached the duty he owed to plaintiff or that plaintiff suffered any damages. Having reached this conclusion, we do not reach the other arguments advanced by the parties.
 

 For the reasons discussed above, we conclude that the trial court did not err by granting defendant's motion for summary judgment and that its order should be
 

 AFFIRMED.
 

 Chief Judge McGEE and Judge DILLON concur.
 

 [1]
 

 To protect the privacy of the victim, we refer to her by the pseudonym "Tina."
 

 [2]
 

 N.C. Gen.Stat. § 14-27.3 was recodified as N.C. Gen.Stat. § 14-27.22, effective 1 December 2015. Plaintiff was charged with offenses occurring in 2011 and was charged under former
 
 N.C. Gen. Stat. § 14-27.3
 
 .
 

 [3]
 

 In 2014, Tina signed a statement saying that she had falsely accused plaintiff of having sex with her. Our evaluation of plaintiff's legal malpractice claim depends, however, on the evidence available in 2012, when defendant represented plaintiff.