IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-956

Filed 20 June 2023

Durham County, No. 21-CVS-1786

GALYA MANN, Plaintiff,

v.

HUBER REAL ESTATE, INC., PAUL HUBER, LEVEL CAROLINA HOMES, LLC, d.b.a. LEVEL HOMES, 2-10 HOME BUYERS WARRANTY, Defendants.

Appeal by Plaintiff from order entered 4 August 2022 by Judge John M. Dunlow in Durham County Superior Court. Heard in the Court of Appeals 22 March 2023.

> *Klein & Sheridan, LC PC, by Benjamin Sheridan and Jed Nolan, for Plaintiff-Appellant.*

> *Manning, Fulton & Skinner, P.A., by Lawrence D. Graham, Jr., and William C. Smith, Jr., for Defendants-Appellees.*

COLLINS, Judge.

Galya Mann ("Plaintiff") appeals the trial court's order granting summary judgment in favor of Huber Real Estate, Inc., and Paul Huber (collectively, "Realtor"). Plaintiff argues that the trial court erred by granting Realtor's motion for summary judgment on her claims for breach of fiduciary duty and unfair and deceptive trade practices. We affirm the trial court's order.

## I.    Background

Plaintiff moved from Bulgaria to the United States and attended East Carolina University, where she obtained an undergraduate degree in supply chain management and a Masters of Business Administration degree.   Since her graduation, she has owned her own business.

Plaintiff and her husband first owned a home together in Wilmington, North Carolina.[1]  They sold that home and purchased a townhome in Clayton, North Carolina.  Plaintiff was not involved in these transactions because she "didn't know much about the United States or anything related to real estate."  When asked whether she read, reviewed, or signed any of the documentation for the purchase of the Clayton townhome, Plaintiff responded, "No.  I am a spouse.  I must have signed all the documents but that's all I did."

Plaintiff and her husband began looking for a new home in Durham, North Carolina, in 2018.  Plaintiff and her daughter met Realtor in April of that year at an open house for a property that Realtor was showing.  Plaintiff hired Realtor as her real estate agent for the sale of her Clayton townhome and in her search for a new home in the Raleigh-Durham area.  On or about 14 August 2018, Plaintiff received an Exclusive Buyer Agency Agreement ("Agreement") from Realtor.  Plaintiff testified at her deposition that she "most probably" read the document; could not remember if

---

[1] Plaintiff and her husband are separated, and he is not a party to this appeal.

she discussed the document with Realtor; "[m]ost probably" asked Realtor to explain parts of the document to her, but could not remember; and did not ask a lawyer to help her decipher anything in the document that she did not understand. When asked whether she had enough time to review the document thoroughly before signing, Plaintiff responded, "My answer is I do not remember at this time."

Paragraph 10 of the Agreement states as follows:

> 10. **OTHER PROFESSIONAL ADVICE.** In addition to the services rendered to Buyer by the Firm under the terms of this Agreement, Buyer is advised to seek other professional advice in matters of law, taxation, financing, insurance, surveying, wood-destroying insect infestation, structural soundness, engineering, and other matters pertaining to any proposed transaction. Although Firm may provide Buyer the names of providers who claim to perform such services, Buyer understands that Firm cannot guarantee the quality of service or level of expertise of any such provider. Buyer agrees to pay the full amount due for all services directly to the service provider whether or not the transaction closes. Buyer also agrees to indemnify and hold Firm harmless from and against any and all liability, claim, loss, damage, suit, or expense that Firm may incur either as a result of Buyer's selection and use of any such provider or Buyer's election not to have one or more of such services performed.

When asked whether she read and understood Paragraph 10 at the time of signing the agreement, Plaintiff responded, "I cannot comment what happened three years ago."

After looking at a home in the Sterling community that did not meet Plaintiff's family's needs, Plaintiff asked Realtor whether there were other options on the

market. Realtor suggested the Brightleaf community in Durham, which was being developed by Level Carolina Homes, LLC ("Level Homes"). That day or the day after, Plaintiff drove around the Brightleaf community. Plaintiff, her husband, and Realtor met with Level Homes' sales representative a few days later. At that meeting, they "[m]ost probably" viewed the house they ultimately bought, "viewed some documents[,]" and "discuss[ed] interior selection." Plaintiff and her husband were "[m]ost probably" given a copy of the sales contract, but Plaintiff could not recall whether they took the contract home with them.

The following exchange took place between Realtor's attorney and Plaintiff at her deposition regarding her review of the contract:

> [Realtor's Attorney]. Did you have sufficient time to review the document before you signed it?
>
> [Plaintiff]. I don't believe so.
>
> [Realtor's Attorney]. You did not have sufficient time --
>
> [Plaintiff]. This is a large document.
>
> [Realtor's Attorney]. Did you read the document before you signed it?
>
> [Plaintiff]. We were concerned about the changes in the interior selection, that part we did go through.
>
> [Realtor's Attorney]. The question is: Did you read this contract before you signed it?
>
> [Plaintiff]. Not the full contract. We relied on our realtor who said that this was a standard contract.
>
> [Realtor's Attorney]. So you did not read the full contract but relied on your realtor who said it was a standard contract?
>
> [Plaintiff]. Yes.

[Realtor's Attorney]. Did the realtor, Mr. Huber, tell you not to read the contract?

[Plaintiff]. The realtor, Mr. Huber, gets 6 percent of the sale of this house to tell us this is the standard contract or not.

[Realtor's Attorney]. My question is: Did Mr. Huber tell you not to read this contract?

[Plaintiff]. I do not remember.

. . . .

[Realtor's Attorney]. Did you discuss the content of the contract with Mr. Huber?

[Plaintiff]. I asked Mr. Huber if this was a standard contract and he said it was a standard contract.

[Realtor's Attorney]. Did you understand that to mean it was the standard contract for all transactions or the standard contract for Level Homes transactions?

[Plaintiff]. I am not in the real estate so when I ask my real estate agent if this is standard contract, I'm assuming that he means this is standard contract period. For all transactions.

[Realtor's Attorney]. Even transactions that Level Homes was not involved in?

[Plaintiff]. Yes. All transactions. I'm guessing there are standard contracts and custom contracts.

Prior to signing the sales contract, Plaintiff asked Realtor to negotiate changes to the contract pertaining to the interior design of the home, which he did. Plaintiff only remembered discussing interior changes with Realtor and did not remember discussing any warranty, arbitration, or limitation of damages provisions with Realtor. Plaintiff and her husband e-signed the purchase contact on 19 August 2018 when they were "[m]ost probably at home." Plaintiff's initials appear at the bottom

of each page and her signature appears on page 9.

The contract included provisions that disclaimed all warranties, including the warranty of merchantability, fitness for a particular purpose, and habitability; limited damages to the cost of repair or replacement; provided that the total damages may not exceed the total purchase price; and required that any disputes be resolved by arbitration. The contract also provided a limited warranty through 2-10 Home Buyers Warranty, which included a one-year warranty on workmanship and materials, a two-year warranty on systems, and a ten-year warranty on structural defects.

After Plaintiff moved into the home, she discovered numerous latent defects, including improper lot grading and drainage, improper shingle and gutter installation, foundation cracks, no moisture barrier in the crawlspace, improper mounting of the HVAC, electrical issues, water in the crawl space, plumbing problems, and biological growth. The repairs to Plaintiff's home were estimated to cost between $83,894.72 and $90,594.73.

Plaintiff filed an unverified complaint against Realtor, Level Homes, and 2-10 Home Buyers Warranty. Against all defendants, Plaintiff brought claims for unfair and deceptive trade practices and civil conspiracy. Against Realtor, Plaintiff also brought claims for breach of fiduciary duty, negligence, and unjust enrichment. Against Level Homes, Plaintiff also brought claims for negligence, fraudulent inducement, unjust enrichment, and unconscionable contract. Against 2-10 Home

Buyers Warranty, Plaintiff also brought claims for fraudulent inducement, unjust enrichment, and unconscionable contract.

Level Homes moved to dismiss or, in the alternative, to stay the proceedings and compel arbitration.[2]  Realtor answered and moved to dismiss for failure to state a claim under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.  By orders entered 16 November 2021, the trial court denied Level Homes' motion to dismiss and deferred its decision on the motion to stay and compel arbitration, and denied Realtor's Rule 12(b)(6) motion to dismiss.

Realtor moved for summary judgment in April 2022.  Realtor's motion came on for hearing on 11 July 2022 and by order entered 4 August 2022, the trial court allowed Realtor's motion for summary judgment on all claims.  Plaintiff timely appealed.

## II.    Discussion

Plaintiff contends that the trial court erred by granting Realtor's motion for summary judgment on her breach of fiduciary duty and unfair and deceptive trade practices claims.[3]

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

[2] This motion is not in the record but is referenced in the trial court's order deciding the motion.

[3] Plaintiff does not appeal the trial court's order granting summary judgment on her claims for negligence, unjust enrichment, and conspiracy.

there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2022). "The party moving for summary judgment bears the burden of bringing forth a forecast of evidence which tends to establish that there is no triable issue of material fact." *Inland Constr. Co. v. Cameron Park II, Ltd., LLC,* 181 N.C. App. 573, 576, 640 S.E.2d 415, 418 (2007) (quotation marks and citation omitted).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

N.C. Gen. Stat. § 1A-1, Rule 56(e) (2022). In other words, "[o]nce the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Draughon v. Harnett Cnty. Bd. of Educ.*, 158 N.C. App. 208, 212, 580 S.E.2d 732, 735 (2003) (quotation marks and citations omitted).

"In the course of a trial court's ruling on a motion for summary judgment, [a] verified complaint may be treated as an affidavit if it (1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein." *Hampton v. Scales*, 248 N.C. App. 144, 149, 789 S.E.2d 478, 483 (2016) (quotation

marks and citations omitted). However, the trial court may not consider unverified pleadings when ruling on a motion for summary judgment because they do not comply with the requirements of Rule 56(e). *Tew v. Brown*, 135 N.C. App. 763, 767, 522 S.E.2d 127, 130 (1999), *disc. review improvidently allowed*, 352 N.C. 145, 531 S.E.2d 213 (2000); *Weatherford v. Glassman*, 129 N.C. App. 618, 623, 500 S.E.2d 466, 470 (1998). Here, Plaintiff's complaint was not verified; thus, it could not be considered in deciding Realtor's summary judgment motion. *See Hampton*, 248 N.C. App. at 149, 789 S.E.2d at 483; *see also Rankin v. Food Lion*, 210 N.C. App. 213, 220, 706 S.E.2d 310, 315-16 (2011).

"We review a trial court's order granting summary judgment de novo." *Archie v. Durham Pub. Sch. Bd. of Educ.*, 283 N.C. App. 472, 474, 874 S.E.2d 616, 619 (2022) (citation omitted). This de novo review requires a two-part analysis: (1) whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact; and (2) whether the moving party is entitled to judgment as a matter of law. *Fayetteville Publ'g Co. v. Advanced Internet Techs., Inc.*, 192 N.C. App. 419, 428, 665 S.E.2d 518, 524 (2008).

## A. Breach of Fiduciary Duty

Plaintiff first contends that the trial court erred by granting Realtor summary judgment on her breach of fiduciary duty claim because there were genuine issues of material fact precluding summary judgment.

"[T]he relationship between a real estate agent and his or her client is by, definition, one of agency, with the agent owing a fiduciary duty to the buyer in all matters relating to the relevant transaction."[4] *Cummings v. Carroll*, 379 N.C. 347, 374-75, 866 S.E.2d 675, 695 (2021) (citation omitted).

> A real estate agent has the fiduciary duty to exercise reasonable care, skill, and diligence in the transaction of business entrusted to him, and he will be responsible to his principal for any loss resulting from his negligence in failing to do so. The care and skill required is that generally possessed and exercised by persons engaged in the same business. This duty requires the agent to make a full and truthful disclosure to the principal of all facts known to him, or discoverable with reasonable diligence and likely to affect the principal. The principal has the right to rely on his agent's statements, and is not required to make his own investigation.

*Id.* at 375, 866 S.E.2d at 695 (quoting *Brown v. Roth*, 133 N.C. App. 52, 54-55, 514 S.E.2d 294, 296 (1999)). A real estate agent also has a duty to "disclose any material facts known to the agent and to discover and disclose to the principal all material facts about which the agent should reasonably have known." *Id.* (quotation marks, italics, and citation omitted).

### 1. Standard Contract

Plaintiff first asserts that "[t]here is a factual dispute that should be sent to a jury over whether [Realtor] breached the fiduciary duty by calling the sales contract

---

[4] Realtor is a real estate broker. The fiduciary duties owed to a client by a real estate broker are the same as those owed by a real estate agent. *See, e.g., Sutton v. Driver*, 211 N.C. App. 92, 100, 712 S.E.2d 318, 323 (2011).

a 'standard contract.'" However, as the parties agree that Realtor referred to the contract as "standard," the issue is not a question of fact, but is rather whether Realtor was entitled to judgment as a matter of law on Plaintiff's breach of fiduciary claim.

At Plaintiff's deposition, the following exchange took place between Plaintiff and Realtor's attorney:

> [Realtor's Attorney]. Did you discuss the content of the contract with Mr. Huber?
>
> [Plaintiff]. I asked Mr. Huber if this was a standard contract and he said it was a standard contract.
>
> [Realtor's Attorney]. Did you understand that to mean it was the standard contract for all transactions or the standard contract for Level Homes transactions?
>
> [Plaintiff]. I am not in the real estate so when I ask my real estate agent if this is standard contract, I'm assuming that he means this is standard contract period. For all transactions.
>
> [Realtor's Attorney]. Even transactions that Level Homes was not involved in?
>
> [Plaintiff]. Yes. All transactions. I'm guessing there are standard contracts and custom contracts.

In Realtor's affidavit, he averred as follows:

> I have sold a number of "spec" homes for large volume builders in different neighborhoods, and I cannot recall a situation in which I was involved that the particular builder's standard form contract was not used. If I told Plaintiff her contract was "standard" it was to communicate that it was Level Home's standard contract, which I believed because it was on Level Homes' pre-printed form, and presented to Plaintiff on our first visit to the Level Homes . . . sales office. I did not tell her

- 11 -

> this particular contract was "standard" among all builders and all similar transactions.

(Emphasis omitted).

Furthermore, at Realtor's deposition, the following exchange took place between Realtor and Plaintiff's attorney:

> [Plaintiff's Attorney]. Do you know whether or not you told Ms. Mann this was a standard contract?
>
> [Realtor]. To best of my recollection, I told her that all builders use their own standard contracts.
>
> [Plaintiff's Attorney]. Why would you use the word standard in that sentence?
>
> [Realtor]. It's just a generality.
>
> [Plaintiff's Attorney]. What does it mean to you in that context?
>
> [Realtor]. It means that they have their own standard. It means that they use their own -- their own forms.

Plaintiff admits that when she and Realtor first met with a Level Homes' sales representative, she and her husband were "[m]ost probably" given a copy of the sales contract. Realtor averred that the contract "was on Level Homes' pre-printed form, and presented to Plaintiff on our first visit to the Level Homes . . . sales office[.]" Plaintiff testified that when she asked Realtor if "this was a standard contract[,]" Realtor "said it was a standard contract." Plaintiff further testified that she "guess[ed] there are standard contracts and custom contracts." However, Plaintiff testified that she "assum[ed]" that Realtor meant "this is standard contract period . . . for all transactions." But there is no evidence that Realtor told Plaintiff it

was the standard contract for all transactions or that Realtor's remark could reasonably be construed to mean as much.

Plaintiff asserts that she could rely solely on Realtor's representation that the sales contract was a "standard contract" and forego her own review of the contract. Plaintiff is misguided.

According to well-established North Carolina law,

> one who signs a paper writing is under a duty to ascertain its contents, and in the absence of a showing that he was wilfully misled or misinformed by the defendant as to these contents, or that they were kept from him in fraudulent opposition to his request, he is held to have signed with full knowledge and assent as to what is therein contained. If unable to read or write, he must ask that the paper be read to him or its meaning explained.

*Williams v. Williams*, 220 N.C. 806, 809-10, 18 S.E.2d 364, 366 (1942) (citations omitted). "It is well established in North Carolina that '[o]ne who signs a written contract without reading it, when he can do so understandably[,] is bound thereby unless the failure to read is justified by some special circumstances.'" *Marion Partners, LLC v. Weatherspoon & Voltz, LLP*, 215 N.C. App. 357, 359, 716 S.E.2d 29, 31 (2011) (first alteration in original) (quoting *Davis v. Davis*, 256 N.C. 468, 472, 124 S.E.2d 130, 133 (1962)). As a result, a litigant's "'duty to read an instrument or to have it read before signing it, is a positive one, and the failure to do so, in the absence of any mistake, fraud or oppression, is a circumstance against which no relief may be had, either at law or in equity.'" *Mills v. Lynch*, 259 N.C. 359, 362, 130 S.E.2d 541,

543-44 (1963) (quoting *Furst v. Merritt*, 190 N.C. 397, 402, 130 S.E. 40, 43 (1925)).

Here, Plaintiff has failed to present evidence that special circumstances absolved her of the duty to read the contract. Plaintiff thus had a positive duty to read the sales contract and her failure to do so "is a circumstance against which no relief may be had, either at law or in equity." *Mills*, 259 N.C. at 362, 130 S.E.2d at 543 (quoting *Furst*, 190 N.C. at 402, 130 S.E. at 43).

In summary, Realtor's reference to the sales contract as a "standard contract" did not amount to a breach of fiduciary duty and Realtor was entitled to judgment as a matter of law.

### 2. *Legal Advice*

Plaintiff also argues that a factual question arises over whether Realtor advised Plaintiff to seek legal advice prior to signing the contract.

Realtor attached to his motion for summary judgment the Agreement, signed by both Plaintiff and Realtor, which states in relevant part: "*Buyer is advised to seek other professional advice in matters of law*, taxation, financing, insurance, surveying, wood-destroying insect infestation, structural soundness, engineering, and other matters pertaining to any proposed transaction" and that "*Buyer also agrees to indemnify and hold Firm harmless from and against any and all liability, claim, loss, damage, suit, or expense that Firm may incur* either *as a result of* Buyer's selection and use of any such provider or *Buyer's election not to have one or more of such services performed.*" (Emphasis added).

Janet Thoren, Director of Regulatory Affairs and Legal Counsel for the North Carolina Real Estate Commission, submitted an affidavit and testified consistent with her affidavit by deposition. Thoren averred that her "division conducts administrative prosecutions of licensed real estate brokers when probable cause is found to believe they have violated Chapter 93A or the Commission's codified rules" and that she is "knowledgeable of and familiar with the various laws, regulations, rules, and guidance that govern any person or entity in the state of North Carolina licensed as a real estate broker and involved in the real estate brokerage business." She further averred that, because the Commission "has not investigated the facts alleged in this particular case[,]" she "cannot give an opinion about what should or should not have been done in this particular case by any licensed broker involved." Thoren's affidavit further states as follows:

> 5. Notwithstanding the above, the standard of care required of real estate licensees in the state of North Carolina includes, but is not limited to, advising a client to seek legal counsel for matters of law, including interpretation of purchase contracts. That duty is incorporated into and facilitated by paragraph 10 of the Exclusive Buyer Agency Agreement, Standard Form 201 ("Form 201"). Because the advice does not have to be verbal, in my opinion, if a buyer does not question the form or content of legal documents such as the purchase contract, the buyer agent's duty to advise a client to seek legal counsel regarding transactional documents may be satisfied in writing. Form 201 may satisfy that requirement.
>
> 6. In North Carolina, it is common and accepted for builders selling new home construction to utilize their own

contracts drafted by their own attorneys and to require the use of such forms by any potential buyers of their product. These types of contracts are sometimes referred to as the builder's "standard" contract. Real estate brokers are not educated on such contracts and have no authority to provide opinions or offer legal advice on their terms, including but not limited to effects of different warranties, and arbitration clauses or other dispute resolution provisions. Real estate brokers are prohibited by law from offering legal advice or interpreting contract language.

Here, the following exchange took place between Plaintiff and Realtor's attorney at Plaintiff's deposition:

> [Realtor's Attorney]. Did you and Mr. Huber discuss the warranty provisions in the contract?
>
> [Plaintiff]. I don't think we went into detail but the interior changes.
>
> [Realtor's Attorney]. Did Mr. Huber make any representations or warranties to you about what the warranty provisions stated in the contract?
>
> [Plaintiff]. As I told you, that is as much as I remember.
>
> [Realtor's Attorney]. So you don't remember discussing the warranty provision in the contract?
>
> [Plaintiff]. I don't believe we discussed the warranty provisions.
>
> [Realtor's Attorney]. Did you and Mr. Huber discuss the arbitration provision in the contract before you signed it?
>
> [Plaintiff]. No.
>
> [Realtor's Attorney]. Did you and Mr. Huber discuss the limitation of damages provision in the contract before you signed it?
>
> [Plaintiff]. I don't believe so.

Plaintiff's inquiry about whether the contract was "standard" was not an inquiry about the legal terms of the contract; it was, at most, a general inquiry about whether the contract was "custom" in some way. Plaintiff admits that there was no discussion about the various legal terms of the contract that she now complains of and that her focus was on the interior changes to the home, which Realtor negotiated for her. Because Plaintiff made no inquiry into the legal terms of the contract which, according to Thoren, may have required Realtor to verbally advise Plaintiff to seek legal advice, Realtor's duty to advise Plaintiff to seek legal counsel regarding the contract was satisfied in writing through the Agreement signed by Plaintiff.

Plaintiff relies on *Cummings* to support her assertion that the Agreement did not insulate Realtor from liability; such assertion is inapposite here. In *Cummings*, the exclusive buyer agency agreement attempted to limit the defendants-real estate agents' fiduciary duties by providing, inter alia, that they had only a duty to disclose "material facts related to the property or concerning the transaction of which they had actual knowledge[.]" 379 N.C. at 375, 866 S.E.2d at 695-96 (quotation marks and brackets omitted). In holding that "[t]he fiduciary duty that a real estate agent owes to his or her principal arises from the agency relationship itself . . . rather than upon the nature of the contractual provisions governing any specific agent-principal relationship[,]" the Court noted that "a real estate agent is obligated to '*discover and disclose*' those material facts that may affect [plaintiffs'] rights and interests or influence [plaintiffs'] decision in the transaction rather than to simply disclose those

of which the agent has 'actual knowledge.'" *Id.* at 376, 866 S.E.2d at 696 (quotation marks and citation omitted). Here, however, the Agreement did not limit Realtor's fiduciary duties, but rather, consistent with Realtor's fiduciary duties, advised Plaintiff to seek other professional advice in addition to the services rendered by Realtor.

Accordingly, there is no genuine issue of material fact regarding whether Realtor advised Plaintiff to seek legal advice prior to signing the sales contract.

**B. Unfair and Deceptive Trade Practices**

Plaintiff next contends that the trial court erred by granting Realtor summary judgment on the unfair and deceptive trade practices claim because Realtor unfairly and deceptively informed Plaintiff that Level Homes' contract was "standard."

Section 75-1.1 of our General Statutes provides that "unfair or deceptive acts or practices in or affecting commerce" are unlawful. N.C. Gen. Stat. § 75-1.1(a) (2022). To establish a prima facie claim for unfair and deceptive trade practices, "the plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, . . . and (3) the act proximately caused injury to the plaintiff." *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 664, 464 S.E.2d 47, 58 (1995) (citation omitted). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981) (citation omitted). "A practice

is deceptive if it has the tendency to deceive . . . ." *D C Custom Freight, LLC v. Tammy A. Ross & Assocs.*, 273 N.C. App. 220, 228, 848 S.E.2d 552, 559 (2020) (citation omitted). Whether an act or practice is unfair or deceptive is a question of law. *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 172, 684 S.E.2d 41, 50 (2009).

As discussed in more detail above, there is no factual dispute about whether Realtor called the sales contract a "standard contract." Plaintiff does not argue that Realtor told her that the contract was a standard contract for all transactions, only that she "assum[ed] that he mean[t] this is standard contract period. For all transactions." Furthermore, Plaintiff does not argue that Realtor's reference to the contract as "standard" to communicate that it was Level Homes' standard contract, rather than a standard contract for all transactions, was unfair or deceptive.

Accordingly, the trial court did not err by granting Realtor summary judgment on Plaintiff's unfair and deceptive trade practices claim.

### III. Conclusion

The trial court did not err by granting Realtor summary judgment on Plaintiff's breach of fiduciary duty and unfair and deceptive trade practices claims because there is no genuine issue of material fact and Realtor was entitled to judgment as a matter of law. Accordingly, the trial court's order is affirmed.

AFFIRMED.

Judge DILLON concurs.

Judge ARROWOOD concurs in part and dissents in part by separate opinion.

No. COA22-956 – *Mann v. Huber Real Est., Inc.*

ARROWOOD, Judge, concurring in part and dissenting in part.

I concur in that portion of the majority's opinion affirming the trial court's grant of summary judgment with respect to Plaintiff's claim for unfair and deceptive trade practices. However, I respectfully dissent from the majority's holding affirming summary judgment in favor of Realtor for Plaintiff's claim for breach of fiduciary duty. Accordingly, I would hold that the trial court erred by granting summary judgment on Plaintiff's claim for breach of fiduciary duty because Realtor had a duty to refer Plaintiff to an attorney when she questioned whether the contract was standard.

There is no question that a realtor owes a fiduciary duty to their clients. *Brown v. Roth*, 133 N.C. App. 52, 54, 514 S.E.2d 294, 296 (1999). Such duty "is not prescribed by contract, but is instead imposed by operation of law." *Cummings v. Carroll*, 379 N.C. 347, 376, 866 S.E.2d 675, 696 (2021) (citation and internal quotation marks omitted). Based on this fiduciary duty, a realtor must "exercise reasonable care, skill, and diligence in the transaction of business [e]ntrusted to him, and he will be responsible to his principal for any loss resulting from his negligence in failing to do so." *Brown,* 133 N.C. App. at 54, 514 S.E.2d at 296  (citation and internal quotation

marks omitted). Generally, what is "reasonable" in the context of negligent behavior depends on the circumstances and is therefore a question for the jury. *Forbes v. Par Ten Grp., Inc.*, 99 N.C. App. 587, 595-96, 394 S.E.2d 643, 648 (1990) (citation and internal quotation marks omitted), *disc. review denied*, 328 N.C. 89, 402 S.E.2d 824 (Mem) (1991).

"This duty requires the agent to 'make a full and truthful disclosure [to the principal] of all facts known to him, or discoverable with reasonable diligence' and likely to affect the principal." *Brown,* 133 N.C. App. at 54-55, 514 S.E.2d at 296 (citations omitted). "In sum, . . . a real estate broker has a duty to make full and truthful disclosure of all known or discoverable facts likely to affect the client. And, the client may rely upon the broker to comply with this duty and forego his or her own investigation." *Sutton v. Driver*, 211 N.C. App. 92, 100, 712 S.E.2d 318, 323 (2011). In cases concerning whether a realtor fulfilled their fiduciary duty to their client, "the relevant issue . . . is whether the record discloses the existence of a genuine issue concerning the extent to which [the realtor] exercised a level of diligence consistent with applicable professional standards." *Cummings*, 379 N.C. at 376-77, 866 S.E.2d at 696 (citation omitted).

Here, I would hold the trial court erred by granting summary judgment to Realtor on Plaintiff's breach of fiduciary duty claim, because there is a genuine issue of fact as to whether Realtor breached their fiduciary duty to Plaintiff regarding the contract between the builder and Plaintiff. The Director of Regulatory Affairs and

Legal Counsel for the North Carolina Real Estate Commission, Janet Thoren ("Ms. Thoren") testified as an expert. Ms. Thoren wrote in her affidavit that when a buyer questions a contract, the "standard of care" requires agents to advise the client to seek legal advice regarding the documents. However, "if a buyer *does not question the form or content of legal documents* . . . the buyer agent's duty to advise a client to seek legal counsel regarding transactional documents may be satisfied in writing[,]" by the agreement. Ms. Thoren, reiterated this sentiment in her deposition, stating that "if the buyer has questions about [a] contract" the broker "should refer the buyer to an attorney[.]" Still, Ms. Thoren confirmed that despite this general advice, she could not opine on whether Realtor violated any rules, since she had not investigated this incident.

During the summary judgment hearing, Plaintiff's attorney argued that Plaintiff asked Realtor whether the contract from the builder was "standard . . ., to which he replied yes, this is a standard contract[,]" thus she "relied on [Realtor]" and "forewent her own investigation." Plaintiff's attorney specifically argued that Plaintiff's inquiry about whether the builder's contract was standard "warranted a referral to an attorney[,]" which Realtor failed to provide. Realtor's attorney countered that although his "client [didn't] recall that specific exchange, . . . he sa[id] that if he was asked [whether the contract was standard], he would have said yeah, this is [the builder's] standard contract."

Based on these arguments, the record, and there being no specific guidance

from the commission, I would hold there is a genuine issue of material fact as to whether Realtor breached his fiduciary duty to Plaintiff by failing to advise her, verbally, at the time she signed the agreement with the builder, to seek legal counsel to answer her question about whether the contract was standard, since she was questioning the form of the contract. I do not believe that boiler plate language in the agreement relied upon by the majority is sufficient to satisfy the obligations under the facts set forth in this case. Therefore, I would vacate the trial court's order granting summary judgment on Plaintiff's claim for breach of fiduciary duty and remand for a trial on this issue. Thus, I dissent.